**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Anthony Lee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case no. 25-cv-1772 |
| | ) |
| v. | ) |
| | ) Honorable Jorge L. Alonso |
| Wexford Health Sources, Inc. *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT KUCERA'S ANSWER TO PLAINTIFF'S**
**COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant Diana Kucera ("Defendant" or "Dr. Kucera"), by and through her attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answers Plaintiff's Complaint, filed on February 20, 2025, (ECF 1) as follows:

**I. JURY DEMAND**

1. Plaintiff Anthony Lee hereby demands a trial by jury.

**ANSWER: Defendant admits that Plaintiff demands a trial by jury. Defendant also demands a trial by jury on all counts so triable.**

**II. JURISDICTION AND VENUE**

2. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff's causes of action are brought under the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

**ANSWER: Defendant admits that this action is brought pursuant to 42 U.S.C. § 1983 and that the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) based on Plaintiff's alleged claims under the Eighth and Fourteenth Amendments.**

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as one or more of the Defendants resides in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

**ANSWER: Defendant admits that venue is proper in this judicial district under 28 U.S.C. § 1391(b).**

### III. PARTIES

4. At all times relevant, Plaintiff, Anthony Lee, ("Anthony") was a citizen of the United States, a resident of Will County, Illinois.

**ANSWER: Admit.**

5. At all times relevant, Anthony was in custody of the State of Illinois's Department of Corrections.

**ANSWER: Admit.**

6. At all times relevant, Anthony was incarcerated at the Illinois Department of Corrections.

**ANSWER: Admit.**

7. From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville Correctional Center ("Stateville"), a prison operated by the State of Illinois.

**ANSWER: Defendant admits that Stateville Correctional Center is operated by the State of Illinois. Defendant lacks knowledge or information sufficient to form a belief as to the exact dates of Plaintiff's incarceration at Stateville.**

8. From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville, a prison managed by the State of Illinois.

**ANSWER: Defendant admits that Stateville Correctional Center is operated by the State of Illinois. Defendant lacks knowledge or information sufficient to form a belief as to the exact dates of Plaintiff's incarceration at Stateville.**

9. From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville, a prison maintained by the State of Illinois.

**ANSWER: Defendant admits that Stateville Correctional Center is operated by the State of Illinois. Defendant lacks knowledge or information sufficient to form a belief as to the exact dates of Plaintiff's incarceration at Stateville.**

10. Anthony is currently incarcerated at Joliet Treatment Center ("JTC"), a prison operated, managed, and maintained by the State of Illinois.

**ANSWER: Admit.**

11. At all times relevant hereto, Wexford Health Sources, Inc. ("Wexford") was a medical care contractor that provided medical personnel and services to the State of Illinois's Department of Corrections and the inmates in its custody.

**ANSWER: Admit.**

12. At the time of the incidents involving Anthony, Dr. Marlene Henze ("Dr. Henze") was a family medicine physician who served as the Medical Director for Stateville.

**ANSWER: Admit.**

13. At the time of the incidents involving Anthony, Dr. Henze was employed by Wexford.

**ANSWER: Admit.**

14. At the time of the incidents involving Anthony, Dr. Henze was an agent or apparent agent of Wexford.

**ANSWER: Admit.**

15. Dr. Henze is currently a medical doctor at JTC.

**ANSWER: Admit.**

16. At all times relevant, Dr. Diana Kucera ("Dr. Kucera") was a clinical psychologist at Stateville.

**ANSWER: Defendant denies that she was employed at Stateville Correctional Center. Defendant admits that she is a licensed clinical psychologist but avers that she was employed as a Psychologist Administrator at Joliet Treatment Center, not Stateville, during the relevant period.**

17. At all times relevant, Dr. Kucera was employed by Wexford.

**ANSWER: Defendant denies that she was employed by Wexford. Defendant avers that she has been an employee of the State of Illinois since March 2018, assigned to Joliet Treatment Center.**

18. At the time of the incidents involving Anthony, Dr. Kucera was an agent or apparent agent of Wexford.

**ANSWER: Defendant denies that she was an agent or apparent agent of Wexford. Defendant avers that she acted solely as a state employee within the scope of her employment with IDOC.**

19. At all times relevant, Nurse Mitchell McGladdery ("Nurse McGladdery") was a registered nurse at Stateville.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

20. At all times relevant, Nurse McGladdery was employed by Wexford

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

21. At all times relevant, Nurse McGladdery was an agent or apparent agent of Wexford.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

22. At all times relevant, Nurse Practitioner Helen Bruckner ("Nurse Practitioner Bruckner") was a nurse practitioner at Stateville.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

23. At all times relevant, Nurse Practitioner Bruckner was employed by Wexford.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

24. At all times relevant, Nurse Practitioner Bruckner was an agent or apparent agent of Wexford.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

25. At all times relevant, Dr. Eileen Couture ("Dr. Couture") was a nurse practitioner at Stateville.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph**.

26. At all times relevant, Dr. Couture was employed by Wexford.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

27. At all times relevant, Dr. Couture was an agent or apparent agent of Wexford

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

28. At all times relevant, Wexford acted as a state actor under color of law.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

29. At all times relevant, Dr. Henze acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

30. At all times relevant, Dr. Kucera acted as a state actor under color of law and within the scope of their employment

**ANSWER: Admit.**

31. At all times relevant, Nurse Mitchell acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

32. At all times relevant, Nurse Practitioner Bruckner acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

33. At all times relevant, Eileen Couture acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

34. At all times relevant, Marlene Henze was the facility medical director for Joliet Treatment Center and Stateville Correctional Center.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

## FACTUAL ALLEGATIONS

35. On February 25, 2023, Anthony set himself on fire in an act of self-harm.

**ANSWER: Defendant admits that, based on information received, Plaintiff engaged in an act of self-harm by setting himself on fire on or about February 25, 2023, at Joliet Treatment Center.**

36. As a result of his self-immolation on February 25, 2023, Anthony suffered third-degree, circumferential burns to his leg.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the specific nature or extent of Plaintiff's injuries.**

37. After Anthony set himself on fire, a Wexford nurse notified Dr. Henze and Dr. Kucera of the incident.

**ANSWER**: **Defendant admits that she was notified by nursing staff, believed to be Wexford employees, of Plaintiff's self-harm incident late on February 25, 2023, via telephone while at home. Defendant admits that Dr. Henze was notified as well.**

38. Dr. Henze and Kucera both assessed Anthony's wounds on February 25, 2023.

**ANSWER**: **Defendant denies that she assessed Plaintiff's wounds on February 25, 2023 as her involvement was limited to two telephone consultations with nursing staff regarding Plaintiff's mental health status and restraint authorization. As such, Defendant denies the allegations set forth in this paragraph.**

39. At the time that Dr. Henze and Dr. Kucera assessed Anthony's wounds on February 25, 2023, Anthony's burns were yellow in color and had blisters that were "bursting during reassessment of restraints."

**ANSWER**: **Defendant denies that she assessed Plaintiff's wounds on February 25, 2023, and therefore denies knowledge of the condition of Plaintiff's burns as alleged. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Dr. Henze's actions or observations and therefore denies that portion of the allegation.**

40. In response to Anthony's burns on February 25, 2023, Dr. Henze ordered Silvadene and directed the nurses to wrap the wound in soft, dry gauze dressing.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

41. Dr. Henze prescribed Tylenol to Anthony.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

42. Dr. Henze did not prescribe any other medications to treat the pain associated with Anthony's burns.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

43. Dr. Henze ordered Anthony to be placed in four-point restraints in response to his act of setting himself on fire.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

44. Dr. Kucera ordered Anthony to be placed in four-point restraints in response to his act of setting himself on fire.

**ANSWER**: **Defendant admits that she authorized the use of four-point restraints on Plaintiff on February 25, 2023, via telephone, based on nursing staff's report of Plaintiff's intent to continue self-harming, but only after receiving confirmation from nursing staff, following consultation with Dr. Henze, that there were no medical contraindications. Defendant denies that this decision was made without regard for Plaintiff's safety and avers it was consistent with her role as a mental health professional to prevent further self-harm.**

45. Anthony complained about the four-point restraints to a Wexford nurse because they were extremely painful due to his burn injuries.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

46. The Wexford nurse called Dr. Kucera multiple times to request that she be permitted to remove Anthony's restraints.

**ANSWER**: **Deny.**

47. The Wexford nurse also called Dr. Henze multiple times to request that she be permitted to remove Anthony's restraints.

**ANSWER**: **Defendant denies the allegation that a Wexford nurse "also" called anyone else to request removal of Anthony's restraints because no one asked her to remove Anthony's restraints in the first place. Defendant lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

48. Dr. Kucera advised the Wexford nurse that Anthony must remain in four-point restraints.

**ANSWER**: **Defendant denies that she advised a Wexford nurse multiple times or at any point after the initial authorization that Plaintiff "must remain" in restraints. Defendant avers that her involvement was limited to an initial telephone call informing her of the situation, and a second call—approximately 10-minutes after the first call—informing her that there was medical clearance for Anthony to be placed in four-point restraints, which only after did Defendant authorize an initial placement—not that he "must remain" in them.**

49. Dr. Henze also advised the Wexford nurse that Anthony must remain in four-point restraints.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

50. Illinois Department of Corrections policy 04.04.103 (hereinafter referred to as "the Restraint Policy") provides several restrictions on the use of restraints for mental health purposes, including the following:

a. Restraints for mental health purposes shall be applied under medical supervision and shall only be used when other, less restrictive measures have been found to be ineffective and to ensure the immediate physical safety of the individual in custody, staff member or others;

b. Restraints shall not be used as a disciplinary measure;

c. Restraint implementation shall be applied by order of a psychiatrist, or if a psychiatrist is not available, a physician, physician's assistant, nurse practitioner or a licensed clinical psychologist;

d. The initial order for use of restraints shall not exceed four hours. Should subsequent orders become necessary, the time limit may be extended, but no subsequent order for restraint extension shall be valid for more than 16 hours beyond the termination of the initial order. If further restraint is required beyond the initial order and one extension, a new order shall be issued pursuant to the requirements provided herein and the Regional Mental Health Administrator shall be notified; and

e. Restraints shall be applied in a bed located in a crisis care area, or similar setting that is in view of staff. Immediately following the placement of an individual in custody in restraints for mental health purposes, medical staff shall conduct an examination of the individual in custody to ensure that: a) No injuries exist; b) Restraint equipment is not applied in a manner likely to result in injury; and c) There is no medical contraindication to maintaining the individual in custody in restraints.

**ANSWER: Admit.**

51. Wexford staff are required to follow the policies of the Illinois Department of Corrections, including the Restraint Policy.

**ANSWER: Admit.**

52. Dr. Henze and Dr. Kucera authorized the use of restraints on Anthony despite his serious injury and the medical contraindication that restraints would further compromise circulation in a limb where circulation was already severely compromised.

**ANSWER: Defendant denies that she authorized restraints despite knowledge of a serious injury or medical contraindication. Defendant avers that she relied on nursing staff's representation, after consultation with Dr. Henze, that Plaintiff's burn was "not significant" and that he was medically cleared for restraints, consistent with her role as a psychologist focused on mental health, not physical care. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Dr. Henze's actions as alleged in this paragraph.**

53. At all times relevant, Dr. Kucera had no training in the treatment of burn wounds.

**ANSWER: Admit.**

54. At all times relevant, Dr. Kucera did not have any qualifications to direct the medical care of physical injury.

**ANSWER: Admit.**

55. At all times relevant, Dr. Kucera was a clinical psychologist, not a medical doctor.

**ANSWER: Admit.**

56. On February 26, 2023, Anthony exhibited the following symptoms:
   a. There were burn blisters on Anthony's lower right leg;
   b. Anthony was complaining of pain;
   c. Anthony's right foot was swollen;
   d. Anthony had no sensation in his right leg;
   e. Anthony's right shin was warm to the touch;
   f. Anthony's right leg has palpable pulses;
   g. There were blisters on Anthony's right shin;
   h. Anthony's right leg was red, brown, and white in certain areas.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. Defendant avers that she was not informed of Plaintiff's condition on February 26, 2023.**

57. Dr. Kucera and Dr. Henze were aware of the condition of Anthony's leg on February 26, 2023.

**ANSWER: Defendant denies that she was "aware of the condition" of Plaintiff's leg on February 26, 2023. Defendant lacks knowledge or information sufficient to form a belief as to Dr. Henze's awareness.**

58. Anthony's symptoms on February 26, 2023, are indicative of compartment syndrome.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

59. Compartment syndrome is a surgical emergency.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

60. Upon learning of Anthony's condition on February 26, 2023, Dr. Henze and Dr. Kucera ordered that Anthony be kept in four-point restraints.

**ANSWER: Defendant denies that she was aware of Plaintiff's condition or ordered that he be kept in restraints on February 26, 2023. Defendant avers that her involvement was limited to the initial authorization on February 25, 2023. Defendant lacks knowledge or information**

sufficient to form a belief as to the truth of Dr. Henze's actions and therefore denies that portion of the allegation.

61. Upon learning of Anthony's condition on February 26, 2023, Dr. Henze and Dr. Kucera failed to:

    a. Allow Anthony movement outside of his restraint;

    b. Order any therapeutic treatment for his symptoms;

    c. Develop or implement any treatment plan to direct the treatment of Anthony's wounds;

    d. Make any efforts to refer Anthony to a hospital;

    e. Make any efforts to refer Anthony to a burn specialist;

    f. Ensure that Anthony's circulation or vascular status was monitored;

    g. Order Anthony's release from four-point restraints;

    h. Make any effort to collaborate with other medical providers regarding Anthony's care

    i. Repeatedly assess the need for restraints;

    j. Take any other reasonable steps to treat Anthony's wound.

**ANSWER: Defendant denies that she was aware of Plaintiff's condition on February 26, 2023, or failed to take any actions alleged in this paragraph. Defendant avers that her involvement was limited to the February 25, 2023 telephone authorization, and she was not informed of Plaintiff's subsequent condition or involved in any further decisions regarding his care. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Dr. Henze's actions and therefore denies that portion of the allegation in this paragraph.**

62. Burn injuries tend to evolve and change such that close attention to their development is required to manage them.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

63. Dr. Henze and Dr. Kucera knew that neither of them had qualifications or training in the treatment of serious burns yet directed the treatment and care of Anthony's wounds.

**ANSWER: Defendant admits that she lacks qualifications or training in burn treatment but denies that she directed the treatment or care of Plaintiff's wounds. Defendant avers that her role was limited to authorizing restraints to prevent further self-harm, relying on medical staff for physical care decisions. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Dr. Henze's knowledge or actions and therefore denies that portion of the allegation.**

64. Anthony's burn compromised blood flow to his leg.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

65. Dr. Henze and Dr. Kucera knew that Anthony's burn would compromise blood flow to his leg.

**ANSWER: Defendant denies that she knew Plaintiff's burn would compromise blood flow to his leg, as she was not informed of such risks and her role was limited to mental health. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Dr. Henze's knowledge and therefore denies that portion of the allegation.**

66. Dr. Henze and Dr. Kucera knew that the blood flow to Anthony's leg would be further compromised by keeping him in restraints.

**ANSWER: Defendant denies that she knew restraints would further compromise blood flow to Plaintiff's leg, as she relied on nursing staff's assurance of medical clearance. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Dr. Henze's knowledge and therefore denies that portion of the allegation.**

67. Dr. Henze and Dr. Kucera knew that Anthony's wounds would significantly worsen if not treated appropriately.

**ANSWER: Defendant denies that she knew Plaintiff's wounds would significantly worsen, as she was not informed of such risks and her role was limited to mental health. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Dr. Henze's knowledge and therefore denies that portion of the allegation.**

68. Dr. Henze and Dr. Kucera's management of Anthony's burns, wounds, and restraints collectively and individually breached the standard of care.

**ANSWER: Defendant denies that she managed Plaintiff's burns or wounds, as her role was limited to a mental health intervention via restraint authorization. Defendant avers that she acted within her professional standards as a psychologist. Defendant lacks knowledge or information sufficient to form a belief as to the truth of Dr. Henze's actions and therefore denies that portion of the allegation.**

69. On February 27, 2023, Stateville Lieutenants Cruz and Powell released Anthony from four-point restraints without permission from Dr. Henze or Dr. Kucera because they recognized that the four-point restraints were cruel and unusual given Anthony's medical condition.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. Defendant avers that she was not informed of or involved in any decision to release Plaintiff from restraints on February 27, 2023.**

70. On February 28, 2023, Dr. Henze finally referred Anthony to the hospital at Amita Health Aurora.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

71. By the time Anthony arrived at the hospital, he no longer had a pulse in his right leg.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

72. By the time Anthony arrived at the hospital, his treaters believed there was a high probability of imminent-life-threatening deterioration that could result in multi-organ failure.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

73. Soon after Anthony arrived at the hospital, he received an escharotomy, a surgical procedure that involves cutting through burned skin to relieve pressure and improve circulation.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

74. Anthony's treating providers noted that Anthony's presentation to the hospital was delayed.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

75. Anthony's treaters at the hospital noted that "he has a high likelihood of loss of limb given the extent of injury and delay in presentation."

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

76. On March 1, 2023, Anthony received a skin graft on his right leg.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

77. Anthony was discharged from the hospital on March 16, 2023, at which time his skin graft and wounds were in good condition.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

78. In the afternoon of March 16, 2023, Anthony was transferred back to Stateville for care of his right leg burn and skin graft.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the precise details regarding the timing and purpose regarding the allegations in this paragraph.**

79. On March 16, 2023, Anthony arrived at Stateville with his skin graft intact and without signs of infection.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

80. Upon returning to Stateville, Anthony required appropriate wound care treatment, including dressing changes and antibiotic ointments, to prevent the development of any infections.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

81. On March 23, 2023, Anthony's wound began to show signs of infection, including slough and a foul odor.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

82. On March 24, 2023, Wexford staff believed that Anthony's skin graft was infected.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

83. On March 24, 2023, Anthony's wound was, in fact, infected.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

84. In response to the infection, Wexford Nurse Practitioner Brianna Orr prescribed one tablet of Augmentin 875/125 by mouth once per day.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

85. No other treatments or medications were given to Anthony in response to the infection.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

86. Wexford practitioners did not order a wound culture or refer Anthony to the hospital or specialist upon learning of his infection.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

87. More than a week after Wexford staff learned of the infection, Anthony was transported to Amita Health Aurora and seen by Dr. Shabirhusain Abadin, MD, at AMITA Medical Group.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

88. Dr. Abadin removed Anthony's dressing and observed that Anthony's wound site was infected and not fully healing.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

89. Dr. Abadin recommended that Anthony continue receiving antibiotics and scheduled him to return to AMITA Health Aurora for a three-month follow-up.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

90. Anthony's 10-day Augmentin prescription elapsed on the same day that he saw Dr. Abadin.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

91. At the time his Augmentin prescription elapsed, Anthony's wound was still infected.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

92. Contrary to Dr. Abadin's instruction, Anthony's Augmentin prescription was not re-ordered.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

93. Upon returning to Stateville from his appointment with Dr. Abadin on April 3, 2023, Anthony did not receive any antibiotics until April 29, 2023.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

94. Throughout the month of April 2023, Anthony's wound continued to worsen.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

95. Nurse McGladdery, Nurse Practitioner Bruckner, and Dr. Couture were responsible for Anthony's wound care and treatment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

96. Nurse McGladdery was responsible for evaluating Anthony's wound nearly every day between April 3, 2023, and May 5, 2023.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

97. Nurse Practitioner Bruckner was responsible for evaluating Anthony's wound multiple times a week between April 3, 2023, and May 5, 2023.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

98. Dr. Couture was responsible for evaluating Anthony's wound on a weekly basis between April 3, 2023, and May 5, 2023.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

99. Prior to their treatment of Anthony Lee, Nurse McGladdery and Nurse Practitioner Bruckner had never cared for or treated a burn or graft site wound.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

100. Nurse McGladdery, along with other Wexford practitioners, falsely noted that there were no signs of infection at Anthony's wound, even though they knew that the infection was worsening.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

101. By April 12, 2023, every Wexford medical provider responsible for Anthony's care knew that Anthony's graft had failed, his wound was severely infected and rapidly worsening, and that he needed to go to a hospital and/or burn specialist.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

102. Throughout the course of Anthony's care, Anthony repeatedly asked Wexford staff for pain medication due to the excruciating pain at his wound site.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

103.     Throughout the course of Anthony's care, Nurse McGladdery repeatedly assured other medical providers that his wound was healing, even though he knew it was rapidly deteriorating.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

104.     Prior to April 27, 2023, Nurse McGladdery, Nurse Practitioner Bruckner, Eileen Couture, and other Wexford staff became aware that Anthony's wound had deteriorated so severely that his bone was exposed and visible yet did not take reasonable and necessary steps to facilitate a referral to a hospital or specialist or otherwise adequately treat his infection.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

105.     On April 29, 2023, Anthony received a wound culture test and an Augmentin prescription.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

106.     The results of the wound culture reflected that Anthony's wound was infected with three strains of bacteria, one of which is intrinsically resistant to Augmentin and two of which are likely resistant to Augmentin.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

107.     After receiving the wound culture results, Nurse Practitioner Bruckner ordered Anthony to be placed on Gentamicin, an antibiotic.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

108.     After consulting with Medical Director Henze, Nurse Practitioner Bruckner changed Anthony's medication regimen to Zosyn and Bactrim.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

109.     Nurse Practitioner Bruckner also prescribed and administered non-steroidal anti-inflammatory injections between May 1, 2023, and May 5, 2023.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

110.     Dr. Couture told Anthony that he should just take the antibiotics and "hold off" on the hospital because Wexford denied his authorization.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

111.     Throughout the month of April and the first week of May, Defendants continued to administer treatment that they knew was ineffective instead of facilitating a referral to a hospital or specialist.

**ANSWER:** Defendant denies that she administered any treatment or was involved in Plaintiff's care after February 25, 2023. Defendant lacks knowledge or information **sufficient to form a belief as to the truth of the** actions of other defendants and therefore denies the allegations as they pertain to others.

112.     Between April 4, 2023, and May 5, 2023, Nurse McGladdery repeatedly assured Anthony that his wound was healing, even though he knew it was rapidly deteriorating.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

113.     Anthony was finally transported to Amita Health Aurora on May 5, 2023. This was the first time he was sent to the hospital, a specialist, or outside provider in over a month.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

114.     Anthony was evaluated by Dr. Stathis Poulakidis at Amita Health Aurora, who determined that Anthony had a rejected graft, a wound on his lower right leg that had been "worsening," and exposed tibia bone.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

115.     Dr. Poulakidis advised Anthony that he would require an above-the-knee amputation.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

116.     On May 6, 2023, Anthony had his leg amputated above the knee.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

117.     Anthony did not self-harm between the time that he received his skin graft and the time of his amputation.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

118.     Anthony was compliant with his medication regimen between March 16, 2023, and the time of his amputation.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

119.     Nurse McGladdery admitted to Anthony that he and the other members of his care team knew his bone was showing well before they referred him to another provider. Nurse McGladdery admitted that the staff was trying to handle the issue themselves despite knowing Anthony's condition was worsening.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

## COUNT I: 42 U.S.C. § 1983

### Against Defendant Wexford Health Sources, Inc.

120.     Plaintiff re-alleges and incorporates paragraphs 1 through 112.

**ANSWER: Defendant incorporates her responses to paragraphs 1–112 as if fully restated here.**

121.     At all relevant times, Plaintiff was incarcerated in the care, custody, and control of the State of Illinois.

**ANSWER: Defendant admits that Plaintiff was in the custody of the State of Illinois during the relevant period.**

122.     At all relevant times, the State of Illinois had contracted Wexford to provide comprehensive medical services to inmates in the care, custody, and control of the State of Illinois's Department of Corrections (IDOC).

**ANSWER: Defendant admits that Wexford was contracted by the State of Illinois to provide medical services to IDOC inmates during the relevant period.**

123.     At all relevant times, Dr. Marlene Henze, Dr. Dianna Kucera, Nurse McGladdery, Nurse Practitioner Bruckner, and Eileen Couture were employed by and agents of Wexford and, pursuant to Wexford's contract with the State of Illinois, were acting under color of state law.

**ANSWER: Defendant denies that she was employed by or an agent of Wexford and avers that she was a State of Illinois employee since March 2018. Defendant lacks knowledge or**

18

information sufficient to form a belief as to the truth of the exact employment status of Dr. Henze, Nurse McGladdery, Nurse Practitioner Bruckner, and Eileen Couture.

124. At all times relevant, Anthony was suffering from a serious medical condition.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

125. Anthony was deprived federal constitutional rights that is properly attributable to Wexford.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

126. Wexford employs general and/or family medicine providers, but does not employ specialists or surgeons, so Wexford must refer incarcerated patients to an external provider—such as a hospital—in order to provide specialty care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

127. According to their contract with the State, Wexford's compensation by the State is reduced "by an amount equal to what the State pays out for Hospital Service once Billed Charges exceed the Annual Hospital Utilization Threshold."

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

128. Wexford's contract with the State requires Wexford to pay the costs associated with referrals to external providers, such as a specialty care site or hospitals, once they exceed a particular threshold, thus economically incentivizing Wexford to keep as much medical care on State property as possible.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

129. As a result of a class action lawsuit, *Lippert v. Jeffreys*, the State has been subject to a Consent Decree since May 9, 2019, regarding the provision of medical services by IDOC and Wexford.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

130. The *Lippert v. Jeffreys* action resulted in the periodic evaluation of IDOC and Wexford policies, practices, and customs as they pertain to medical care by an independent monitor.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

131.     The Fifth Annual Report of the independent Lippert monitor was filed on August 9, 2022, and found the following:

a.  IDOC had failed to address the eight recommendations made by the independent monitor in the preceding report regarding specialty care referrals.
b.   "[D]elays and lack of coordination of care with specialists that resulted in significant morbidity and mortality."
c.  "The lack of coordination of specialty care has been a problem for the duration of the Consent Decree and has been documented in multiple record reviews including in the mortality reviews in the appendix."
d.  "IDOC has not provided any information that these problems have been corrected or that they have been addressed in any way."
e.  "The judgment of physicians with respect to sending patients for specialty referral and hospitalization is still not working to provide a safe and effective health program as evidenced in the Monitor's mortality reviews."
f.  "Hospital physicians often provide recommendations but providers at IDOC prisons frequently fail to review these recommendations and modify the therapeutic plan based on the recommendations."

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

132.     The first four Annual Reports of the independent *Lippert* monitor cited similar deficiencies in the provision of medical care at IDOC facilities.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

133.     All Lippert monitor reports provided notice to IDOC and Wexford of their unconstitutional policies, practices, and procedures.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

134.     The Seventh Annual Report of the independent Lippert monitor was released on December 27, 2023, and found the following:

a.  IDOC had not initiated an analysis of their specialty care in order to improve specialty care services;
b.  One of the most substantial areas for opportunities for improvement identified in reviews of patients who died in IDOC custody was specialty care;

c. "There were multiple [opportunities for improvement] related to physician oversight, physician availability, and failure to recognize or address significant signs and symptoms."

d. "The two major barriers holding back IDOC's progress toward compliance with the Consent Decree and the resulting safe, effective, and respectful health care delivery system are staffing and the physical plant deficiencies."

e. Approximately half the positions Wexford was responsible for providing were unfilled.

f. "The state needs to radically change the recruitment and hiring process and expect the same from the contract vendor."

g. "Access to specialty care, including diagnostic testing is still poor. Timeliness of specialty referral and follow up remains problematic and constituted one of the most frequent deficiencies identified in mortality reviews."

h. "The absence of physician oversight and insufficient support staff contribute to delays and poor communication about patient treatment."

i. "Reimbursement rates for specialty care providers appears to be a significant problem statewide and the state of Illinois needs to reexamine if the current method of reimbursement for offsite care is a barrier to access."

j. One third of physician positions were vacant.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

135.    All of these failures by IDOC that are referenced in the *Lippert* reports are substantially caused by the acts and omissions of Wexford.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

136.    As of December 27, 2023, 107 deaths in IDOC were reviewed by a mortality review group led by Southern Illinois University (SIU).

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

137.    Of the 107 deaths the SIU mortality review team provided to the independent monitor, they found 899 "opportunities for improvement."

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

138.    Nearly one fifth of the "opportunities for improvement" found by the SIU mortality review team related to specialty and hospital care, including failure to refer to specialty care or a hospital.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

139.     Nearly one third of the "opportunities for improvement" found by the SIU involved physician practice issues, including failure to timely refer to specialty care or hospital, failure to monitor or manage chronic illness or not managing consistent with standards of care, failure to order timely labs or tests, physician availability, failure to monitor medication management.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

140.     Management and treatment of a skin graft requires specialty care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

141.     Management and treatment of a skin graft that shows signs of infection require specialty care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

142.     Treatment of a skin graft that is failing or has failed requires specialty care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

143.     Wexford providers were trained that inmates tend to lie about their symptoms in order to get permission to leave the prison facility, so providers should be skeptical of inmate's medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

144.     This training influenced how Wexford doctors assessed their patients and decided whether to provide outside referrals.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

145.     At all times relevant, Wexford implemented the following unconstitutional widespread practices and customs:

a.  Medical providers delay incarcerated patients' access to adequate medical care, including evaluation by specialists;

b.  Medical providers are discouraged, inhibited, disincentivized, and/or prevented from referring inmates to outside hospitals or specialists;

c.  Medical providers attempt to treat medical conditions beyond their expertise in lieu of referring that incarcerated patient to the appropriate specialist;

d. Medical providers referring incarcerated patients to external providers, such as a specialty care site or hospital, only as a last resort, even when the needs of an incarcerated patient clearly exceed that which can be provided within an IDOC facility;

e. Follow-up appointments are routinely not scheduled or, when they are scheduled, do not occur;

f. When an inmate is sent to an outside provider, Wexford medical providers fail to follow their orders and recommendations;

g. Medical providers do not properly assess inmates' needs for medical care;

h. Medical providers do not properly engage with inmates to determine their medical needs;

i. IDOC facilities are routinely understaffed in the medical provider roles that Wexford is responsible for filling; and,

j. Medical providers assume that patients are lying about their symptoms.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

146.     Wexford's routine failure to timely refer patients to specialty care, facilitate referrals and follow-up appointments, provide necessary specialized care in their infirmary settings, and follow the orders of outside specialists have resulted in delayed treatment, poor outcomes, and unnecessary deaths, including the following:

a. When a hospital recommended that an inmate, who had been hospitalized three times with heart failure, be seen by a cardiologist, Wexford did not refer him. The inmate was kept in the prison infirmary for nine days, where he developed pneumonia, went into shock, and fell and broke three ribs. On the ninth day, he was hospitalized, but he died two days later;

b. A patient who needed immediate hospitalization for transfusion and diagnostic evaluation due to a life-threatening hemoglobin level was prescribed iron therapy and repeat blood count by a Wexford provider and was not followed up with for an entire year. After he finally was hospitalized and referred to oncology, his plan for surgery and oncologist recommendations were not followed by the prison facility. His condition deteriorated, and he should have been admitted to a specialized nursing unit instead of the prison infirmary. He ultimately died in prison with very little physician oversight in the last few days of his life;

c. A patient who had a cardioversion was recommended to return to his specialty provider in one month, but the referral was never made; and

d. A patient had a cardiology appointment with an outside provider, but the consult was not reviewed by any Wexford provider for fifteen days, and the Wexford provider never followed up with the patient.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

147.     As a result of these policies, procedures, and customs, Anthony Lee suffered painful injuries for which he was not timely referred to the appropriate specialist and ultimately lost a limb.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. Defendant denies any wrongdoing or liability as alleged against her in relation to Count I.**

### COUNT II: 42 U.S.C. § 1983

### Against Defendant Dr. Marlene Henze

148.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–147 as if fully restated here.**

149.     Dr. Henze, in addition to being one of Anthony's treating providers at Joliet Treatment Center, was also, at all relevant times, the Facility Medical Director at Stateville Correctional Center and Joliet Treatment Center.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

150.     As Facility Medical Director, Dr. Henze had the authority to refer an inmate in Stateville Correctional Center and Joliet Treatment Center to an outside hospital.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

151.     At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

152.     Dr. Henze knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

153.     Dr. Henze was deliberately indifferent to Anthony's serious medical need.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

154.     Dr. Henze recklessly disregarded Anthony's serious medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

155.    Dr. Henze intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

156.    Dr. Henze withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

157.    Dr. Henze's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

158.    No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Dr. Henze did.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

159.    Dr. Henze failed to conform to basic standards of medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

160.    Dr. Henze's "treatment decisions" were a substantial departure from accepted professional judgment, practice and standards, demonstrating that she did not rely on such judgment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

161.    Dr. Henze persisted in a course of treatment known to be ineffective.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

162.    Dr. Henze chose easier and less efficacious treatments without exercising sound and reasonable professional judgment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

163.     Dr. Henze's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

164.     Dr. Henze's deliberate indifference directly and proximately caused Anthony's injuries.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

## COUNT III: 42 U.S.C. § 1983

### Against Defendant Dr. Diana Kucera

165.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–164 as if fully restated here.**

166.     At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

167.     Dr. Kucera knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant denies that she knew Plaintiff had a serious medical need that carried risks of permanent, serious impairment if left untreated. Defendant avers that she was informed by nursing staff on February 25, 2023, that Plaintiff's burn was "not significant" and that he was medically cleared for restraints, and she had no further information suggesting otherwise.**

168.     Dr. Kucera was deliberately indifferent to Anthony's serious medical need.

**ANSWER: Defendant denies that she was deliberately indifferent to Plaintiff's medical needs. Defendant avers that her actions were limited to authorizing restraints to prevent further self-harm, based on her mental health expertise and reliance on medical staff's clearance, consistent with IDOC policy and her professional judgment.**

169.     Dr. Kucera recklessly disregarded Anthony's serious medical needs.

**ANSWER: Defendant denies that she recklessly disregarded Plaintiff's medical needs. Defendant avers that her actions were reasonable and within her scope as a psychologist to address Plaintiff's mental health crisis**.

170.     Dr. Kucera intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: Defendant denies that she intended to deprive Plaintiff of necessary treatment. Defendant avers that her intent was to protect Plaintiff from further self-harm, and she relied on medical staff for physical care decisions.**

171.     Dr. Kucera withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: Defendant denies that she withheld medical care causing needless pain and suffering. Defendant avers that she had no role in Plaintiff's physical care beyond the initial restraint authorization and relied on medical staff for such matters.**

172.     Dr. Kucera's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: Defendant denies that her actions were unreasonable or a gross departure from ordinary care. Defendant avers that her decision to authorize restraints was within her training as a psychologist, consistent with IDOC policy, and aimed at addressing Plaintiff's mental health crisis, not his physical care.**

173.     No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Dr. Kucera did.

**ANSWER: Defendant denies that her response was incompetent. Defendant avers that her actions were consistent with the standard of care for a psychologist addressing a self-harm risk, relying on medical staff's clearance.**

174.     Dr. Kucera failed to conform to basic standards of medical care.

**ANSWER: Defendant denies that she failed to conform to basic standards within her role as a psychologist. Defendant avers that she had no duty to provide medical care for physical conditions and acted appropriately within her mental health scope.**

175.     Dr. Kucera's "treatment decisions" were a substantial departure from accepted professional judgment, practice and standards, demonstrating that she did not rely on such judgment.

**ANSWER: Defendant denies that her decisions departed from professional judgment. Defendant avers that her restraint authorization was based on accepted psychological practice to prevent self-harm, consistent with IDOC policy.**

176.     Dr. Kucera persisted in a course of treatment known to be ineffective.

**ANSWER: Defendant denies that she persisted in any course of treatment or knew it to be ineffective. Defendant avers that her involvement was limited to a single authorization on February 25, 2023, and she had no further role in Plaintiff's care.**

177.     Dr. Kucera chose easier and less efficacious treatments without exercising sound or reasonable professional judgment.

**ANSWER: Defendant denies that she chose ineffective treatments or failed to exercise professional judgment. Defendant avers that her restraint authorization was a reasonable mental health intervention based on the information provided.**

178.     Dr. Kucera's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: Defendant denies that her conduct contributed to any delay in treatment or lacked a legitimate penological interest. Defendant avers that her restraint authorization served the legitimate interest of preventing further self-harm.**

179.     Dr. Kucera's deliberate indifference directly and proximately caused Anthony's injuries.

**ANSWER: Defendant denies that she acted with deliberate indifference or that her actions directly or proximately caused Plaintiff's injuries. Defendant avers that her role was minimal and causation lies, if anywhere, with medical staff responsible for Plaintiff's physical care.**

## COUNT IV: 42 U.S.C. § 1983

### Against Defendant Nurse Mitchell McGladdery

180.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–179 as if fully restated here.**

181.     At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

182.     McGladdery knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

183.     McGladdery was deliberately indifferent to Anthony's serious medical need.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

184.     McGladdery recklessly disregarded Anthony's serious medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

185.     McGladdery intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

186.     McGladdery withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

187.     McGladdery's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

188.     No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that McGladdery did.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

189.     McGladdery failed to conform to basic standards of medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

190.     McGladdery's "treatment decisions" were a substantial departure from accepted professional judgment, practice, and standards.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

191.     McGladdery persisted in a course of treatment known to be ineffective.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

192.     McGladdery chose easier and less efficacious treatments without exercising sound professional judgment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

193.     McGladdery's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

194.     McGladdery's deliberate indifference directly and proximately caused Anthony's injuries.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

## COUNT V: 42 U.S.C. § 1983

### Against Defendant Nurse Practitioner Bruckner

195.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–194 as if fully restated here.**

196.     At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

197.     Bruckner knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

198.     Bruckner was deliberately indifferent to Anthony's serious medical need.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

199.     Bruckner recklessly disregarded Anthony's serious medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

200.     Bruckner intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

201.     Bruckner withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

202.     Bruckner's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

203.     No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Bruckner did.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

204.     Bruckner failed to conform to basic standards of medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

205.     Bruckner "treatment decisions" were a substantial departure from accepted professional judgment, practice and standards, demonstrating that she did not rely on such judgment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

206.     Bruckner persisted in a course of treatment known to be ineffective.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

207.     Bruckner chose easier and less efficacious treatments without exercising sound and reasonable professional judgment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

208.     Bruckner's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

209.     Bruckner's deliberate indifference directly and proximately caused Anthony's injuries.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

## COUNT VI: 42 U.S.C. § 1983

### Against Defendant Dr. Eileen Couture

210.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–209 as if fully restated here.**

211.     At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

212.     Dr. Couture knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

213.     Dr. Couture was deliberately indifferent to Anthony's serious medical need.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

214.     Dr. Couture recklessly disregarded Anthony's serious medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

215.     Dr. Couture intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

216.     Dr. Couture withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

217.     Dr. Couture's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

218.     No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Dr. Couture did.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

219.     Dr. Couture failed to conform to basic standards of medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

220.     Dr. Couture "treatment decisions" were a substantial departure from accepted professional judgment, practice and standards.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

221.     Dr. Couture persisted in a course of treatment known to be ineffective.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

222.     Dr. Couture chose easier and less efficacious treatments without exercising sound and reasonable professional judgment.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

223.     Dr. Couture's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

224.     Dr. Couture's deliberate indifference directly and proximately caused Anthony's injuries.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

### COUNT VII: Medical Malpractice, Negligence, Respondeat Superior

### Against Defendant Wexford Health Sources, Inc.

225.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–224 as if fully restated here.**

226.     At all relevant times, Wexford owed Anthony Lee a duty of reasonable medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

227.     Wexford, by and through its agents and employees, breached its duty to provide reasonable medical care to Anthony Lee.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

228.     The Wexford employees and/or agents responsible for caring for Anthony's skin graft, including Dr. Henze, Dr. Kucera, Nurse McGladdery, Nurse Practitioner Bruckner, and Dr. Couture breached their duty of care, were negligent, and consciously disregarded Anthony's safety.

**ANSWER: Defendant denies that she was a Wexford employee or agent or that she was responsible for caring for Plaintiff's skin graft. Defendant avers that her involvement was limited to a mental health intervention on February 25, 2023. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the actions of Dr. Henze, Nurse McGladdery, Nurse Practitioner Bruckner, and Dr. Couture and therefore denies that portion of the allegations alleged in this paragraph.**

229.     As a result of Wexford employees and/or agents' negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: Defendant denies that her actions caused Plaintiff's injuries. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the actions of other alleged Wexford employees or agents and therefore denies the allegations as they pertain to others.**

230.     Attached to the Complaint as Exhibit A is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Admit.**

## COUNT VIII: Medical Malpractice, Negligence

### Against Defendant Dr. Marlene Henze

231.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:** Defendant incorporates her responses to paragraphs 1–230 as if fully restated here.

232.     At all relevant times, Dr. Henze owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

233.     Dr. Henze breached her duty to provide reasonable medical care to Anthony Lee.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

234.     Dr. Henze breached her duty of care to Anthony and was negligent.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

235.     As a result of Dr. Henze's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

236.     Attached to the Complaint as Exhibit A is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Admit.**

## COUNT IX: Medical Malpractice, Negligence

### Against Defendant Dr. Diana Kucera

237.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–236 as if fully restated here.**

238.     At all relevant times, Dr. Kucera owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: Defendant admits that, as a psychologist administrator, she owed Plaintiff a duty of reasonable care within the scope of her mental health role but denies that this duty extended to providing medical care for physical conditions such as burns.**

239.    Dr. Kucera breached their duty to provide reasonable medical care to Anthony Lee.

**ANSWER: Defendant denies that she breached any duty to provide reasonable care within her role as a psychologist. Defendant avers that she acted reasonably by authorizing restraints to prevent self-harm, relying on medical staff's clearance.**

240.    Dr. Kucera breached her duty of care to Anthony and was negligent.

**ANSWER: Defendant denies that she breached her duty of care or was negligent. Defendant avers that her actions were within the scope of her mental health role and consistent with professional standards.**

241.    As a result of Dr. Kucera's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: Defendant denies that her actions or omissions caused Plaintiff unnecessary pain or the loss of his limb. Defendant avers that her limited involvement on February 25, 2023, did not proximately cause Plaintiff's alleged injuries, which occurred due to subsequent events outside her control or knowledge.**

242.    Attached to the Complaint as Exhibit A is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Admit.**

### COUNT X: Medical Malpractice, Negligence

**Against Defendant Nurse Mitchell McGladdery**

243.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–242 as if fully restated here.**

244.    At all relevant times, Nurse McGladdery owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

245.    Nurse McGladdery breached their duty to provide reasonable medical care to Anthony Lee.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

246.    Nurse McGladdery breached her duty of care to Anthony and was negligent.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

247.    As a result of Nurse McGladdery's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

248.    Attached to the Complaint as Exhibit A is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Admit.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant McGladdery for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the propriety of Plaintiff's demand against Nurse McGladdery and therefore takes no position on it.**

### COUNT XI: Medical Malpractice, Negligence

#### Against Defendant Nurse Practitioner Helen Bruckner

249.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–248 as if fully restated here.**

250.    At all relevant times, Nurse Practitioner Bruckner owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

251.    Nurse Practitioner Bruckner breached their duty to provide reasonable medical care to Anthony Lee.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

252.     Nurse Practitioner Bruckner breached her duty of care to Anthony and was negligent.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

253.     As a result of Nurse Practitioner Bruckner's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

254.     Attached to the Complaint as Exhibit A is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Defendant admits that an affidavit and report are attached as Exhibit A but lacks knowledge or information sufficient to form a belief as to the truth of their applicability to Nurse Practitioner Bruckner's actions.**

WHEREFORE, Plaintiff, Anthony Lee, demands judgment against Defendant Bruckner for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the propriety of Plaintiff's demand against Nurse Practitioner Bruckner and therefore takes no position on it.**

## COUNT XII: Medical Malpractice, Negligence

### Against Defendant Dr. Eileen Couture

255.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Defendant incorporates her responses to paragraphs 1–254 as if fully restated here.**

256.     At all relevant times, Dr. Couture owed Anthony Lee a duty to provide reasonable medical care.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

257.     Dr. Couture breached their duty to provide reasonable medical care to Anthony Lee.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

258.     Dr. Couture breached her duty of care to Anthony and was negligent.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

259.　　　As a result of Dr. Couture's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

260.　　　Attached to the Complaint as Exhibit A is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Admit.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant Couture for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the propriety of Plaintiff's demand against Dr. Couture and therefore takes no position on it.**

### IV. Request for Relief

WHEREFORE, Plaintiff, Anthony Lee, respectfully requests judgment against Defendants Wexford, Henze, Kucera, McGladdery, Bruckner, and Couture, jointly and severally, for the following:

　a.　An award of compensatory and punitive damages;
　b.　An award of full costs and attorneys' fees arising out of this litigation pursuant to 42 U.S.C. § 1988(b); and
　c.　Any other further relief this Court may deem just and appropriate.

**ANSWER: Defendant denies that Plaintiff is entitled to judgment against her for compensatory damages, punitive damages, costs, attorney's fees under 42 U.S.C. § 1988(b), or any other relief, as she did not violate Plaintiff's rights or cause his alleged injuries. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the propriety of Plaintiff's demands against other defendants and therefore takes no position on those portions of the request.**

### JURY DEMAND

Defendant demands a trial by jury on all counts so triable.

### GENERAL DENIAL

Defendant expressly denies any allegation not specifically admitted herein.

## **AFFIRMATIVE DEFENSES**

**First Affirmative Defense:** Pursuant to the Eleventh Amendment and Illinois law, Plaintiff's claims under 42 U.S.C. § 1983 (Count III) seeking monetary damages against Dr. Kucera in her official capacity as a state employee are barred by sovereign immunity. Additionally, any State law claims are functionally against the State of Illinois, and thus under the State's sovereign immunity such claims must be exclusively brought in the Illinois Court of Claims.

**Second Affirmative Defense:** At all times relevant, Dr. Kucera acted in good faith within the scope of her official duties as a state-employed Psychologist Administrator without violating Plaintiff's clearly established constitutional rights of which a reasonable person would have known. Dr. Kucera is therefore protected from liability under Count III by the doctrine of qualified immunity.

**Third Affirmative Defense:** Dr. Kucera's duty to Plaintiff was limited to mental health care within her role as a psychologist. She lacked authority, training, or responsibility to treat Plaintiff's physical injuries, and her actions were consistent with IDOC Policy 04.04.103 and professional standards, negating liability under Counts III and IX.

**Fourth Affirmative Defense:** Plaintiff's alleged injuries, including prolonged pain and amputation, were not proximately caused by Dr. Kucera's actions, which were limited to a single restraint authorization on February 25, 2023, based on medical clearance from nursing staff. Subsequent care and outcomes were managed by others, breaking any causal chain attributable to Dr. Kucera.

**Fifth Affirmative Defense:** To the extent Plaintiff failed to fully and properly exhaust administrative remedies available under IDOC procedures prior to filing this lawsuit, his claims are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532 (7th Cir. 1999).

**Sixth Affirmative Defense:** To the extent any of Plaintiff's claims arose more than two years prior to the filing of the Complaint on February 25, 2025, such claims are barred by the applicable statute of limitations for § 1983 and negligence actions in Illinois. *See* 735 ILCS 5/13-202; *Wallace v. Kato*, 549 U.S. 384 (2007).


Dated: April 2, 2025                                    Respectfully submitted,


KWAME RAOUL
Attorney General of Illinois              By:      */s/Carl S. Stier*
                                                            CARL S. STIER
                                                            Assistant Attorney General

40

General Law Bureau
Office of the Illinois Attorney General
115 South LaSalle Street,
Chicago, Illinois 60603
(773) 835-0637
Carl.Stier@ilag.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony Lee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case no. 25-cv-01772 |
| | ) | |
| v. | ) | Honorable Jorge L. Alonso |
| | ) | |
| Wexford Health Sources Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 2, 2025, he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.


KWAME RAOUL                                         */s/ Carl S. Stier*
Attorney General of Illinois


42