**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| ANTHONY LEE | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| WEXFORD HEALTH SOURCES, INC., | ) | No. | 25-cv-01772 |
| MARLENE HENZE, DIANNA KUCERA, | ) | | |
| MITCHELL MCGLADDERY, HELEN | ) | | |
| BRUCKNER, EILEEN COUTURE, DR. STATHIS | ) | | |
| POULAKIDAS, PRESENSE CENTRAL AND | ) | | |
| SUBURBAN HOSPITALS NETWORK d/b/a | ) | | |
| ASCENSION MERCY, and d/b/a AMITA | ) | | |
| HEALTH MERCY MEDICAL CENTER, a/k/a | ) | | |
| AMITA HEALTH AURORA, also d/b/a PRIME | ) | | |
| HEALTHCARE SERVICES, INC. a/k/a PRIME | ) | | |
| HEALTHCARE d/b/a MERCY MEDICAL | ) | | |
| CENTER | ) | | |
| | | | |
| Defendants. | | | |

## DEFENDANT, STATHIS POULAKIDAS, M.D.'S, ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AT LAW

NOW COMES the Defendant, **STATHIS POULAKIDAS, M.D.,** by and through his attorneys, **HALL PRANGLE LLC**, and for his Answer to Plaintiff's Second Amended Complaint at Law (hereinafter "Plaintiff's Second Amended Complaint"), states as follows:

### I. JURY DEMAND

1.      Plaintiff Anthony Lee hereby demands a trial by jury.

**ANSWER:    The allegations contained in Section I, Paragraph 1 of Plaintiff's Second Amended Complaint are not directed to this Defendant and, therefore, this Defendant makes no answer thereto.**

### II. JURISDICTION AND VENUE

2.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff's causes of action are brought under the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

**ANSWER:** **This Defendant admits that Plaintiff has brought this action pursuant to 42 U.S.C. § 1983. The remaining allegations contained in Section II, Paragraph 2 of Plaintiff's Second Amended Complaint are denied.**

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as one or more of the Defendants resides in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

**ANSWER:** **This Defendant admits that the venue is technically proper under 28 U.S.C. § 1391(b). The remaining allegations contained in Section II, Paragraph 3 of Plaintiff's Second Amended Complaint are denied.**

### III.   PARTIES

4.      At all times relevant, Plaintiff, Anthony Lee, ("Anthony") was a citizen of the United States, a resident of Will County, Illinois.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 4 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations, but demands strict proof thereof.**

5.      At all times relevant, Anthony was in custody of the State of Illinois's Department of Corrections and incarcerated in the Illinois Department of Corrections.

**ANSWER:** **Based upon information and belief, this Defendant admits the allegation contained in Section III, Paragraph 5 of Plaintiff's Second Amended Complaint.**

6.      From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville Correctional Center ("Stateville"), a prison operated by the State of Illinois.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 6 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

7.      From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville, a prison managed by the State of Illinois.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 7 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

8.     From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville, a prison maintained by the State of Illinois.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 8 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

9.     Anthony is currently incarcerated at Joliet Treatment Center ("JTC"), a prison operated, managed, and maintained by the State of Illinois.

**ANSWER:     Based upon information and belief, this Defendant admits the allegation contained in Section III, Paragraph 9 of Plaintiff's Second Amended Complaint.**

10.     At all times relevant hereto, Wexford Health Sources, Inc. ("Wexford") was a medical care contractor that provided medical personnel and services to the State of Illinois's Department of Corrections and the inmates in its custody.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 10 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

11.     At the time of the incidents involving Anthony, Dr. Marlene Henze ("Dr. Henze") was a family medicine physician who served as the Medical Director for Stateville.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 11 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

12.     At the time of the incidents involving Anthony, Dr. Henze was employed by Wexford.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 12 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

13.     At the time of the incidents involving Anthony, Dr. Henze was an agent or apparent agent of Wexford.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 13 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

14.     Dr. Henze is currently a medical doctor at JTC.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 14 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

15.     At all times relevant, Dr. Diana Kucera ("Dr. Kucera") was a clinical psychologist at Stateville.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 15 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

16.     At all times relevant, Dr. Kucera was employed by Wexford.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 16 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

17.     At the time of the incidents involving Anthony, Dr. Kucera was an agent or apparent agent of Wexford.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 17 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

18.     At all times relevant, Nurse Mitchell McGladdery ("Nurse McGladdery") was a registered nurse at Stateville.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 18 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

19.     At all times relevant, Nurse McGladdery was employed by Wexford.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 19 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

20.      At all times relevant, Nurse McGladdery was an agent or apparent agent of Wexford.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 20 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

21.      At all times relevant, Nurse Practitioner Helen Bruckner ("Nurse Practitioner Bruckner") was a nurse practitioner at Stateville.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 21 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

22.      At all times relevant, Nurse Practitioner Bruckner was employed by Wexford.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 22 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

23.      At all times relevant, Nurse Practitioner Bruckner was an agent or apparent agent of Wexford.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 23 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

24.      At all times relevant, Dr. Eileen Couture ("Dr. Couture") was a nurse practitioner at Stateville.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 24 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

25.      At all times relevant, Dr. Couture was employed by Wexford.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 25 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

26.     At all times relevant, Dr. Couture was an agent or apparent agent of Wexford.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 26 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

27.     At all times relevant, Wexford acted as a state actor under color of law.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 27 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

28.     At all times relevant, Dr. Henze acted as a state actor under color of law and within the scope of their employment.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 28 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

29.     At all times relevant, Dr. Kucera acted as a state actor under color of law and within the scope of their employment.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 29 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

30.     At all times relevant, Nurse Mitchell acted as a state actor under color of law and within the scope of their employment.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 30 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

31.     At all times relevant, Nurse Practitioner Bruckner acted as a state actor under color of law and within the scope of their employment.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 31 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

32.     At all times relevant, Eileen Couture acted as a state actor under color of law and within the scope of their employment.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 32 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

33.     At all times relevant, Marlene Henze was the facility medical director for Joliet Treatment Center and Stateville Correctional Center.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 33 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

34.     At all times relevant, Dr. Stathis Poulakidas was employed by Presence Central and Suburban Hospitals Network d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER:     This Defendant admits only that Dr. Stathis Poulakidas was employed by Ascension at the time of providing care to Plaintiff, as supported by medical records. Further this Defendant denies that he was employed by Presence Central and Suburban Hospitals d/b/a Ascension Mercy Medical Center, and the remaining allegations contained in Section III, Paragraph 34 of Plaintiff's Second Amended Complaint are denied.**

35.     Presence Central and Suburban Hospitals Network is an Illinois not-for-profit corporation that has also done business as Ascension Mercy, Health Mercy Medical Center, AMITA Health Aurora. Reference to each and any of these entities, including AMITA Health Aurora, should be construed to include reference to the parent entity of Presence Central and Suburban Hospitals Network.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section III, Paragraph 35 of Plaintiff's Second Amended Complaint and therefore can neither admit nor deny said allegations.**

36.     Mr. Lee received treatment from Dr. Stathis Poulakidas at AMITA Health Aurora, a full-service hospital and medical center providing emergency, medical, laboratory, imaging, and surgical car [sic] and all associated care to the general public, including Mr. Lee.

**ANSWER:     This Defendant admits only that he provided medical care and treatments to Plaintiff at the location and on the dates as specified in medical records, and denies the remaining allegations contained in Section III, Paragraph 36 of Plaintiff's Second Amended Complaint.**

37.     At all times relevant, Dr. Stathis Poulakidas acted as an agent or apparent agent and employee of Presence Central and Suburban Hospitals Network d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER:     This Defendant makes no answer to the allegations contained in Section III, Paragraph 37 of Plaintiff's Second Amended Complaint to the extent they call for a legal conclusion. Answering further, this Defendant admits only that he was employed by Ascension at the time of providing care to Plaintiff, as supported by medical records. Further this Defendant denies that he was employed by Presence Central and Suburban Hospitals d/b/a Ascension Mercy Medical Center, and the remaining allegations contained in Section III, Paragraph 37 of Plaintiff's Second Amended Complaint are denied.**

38.     At all times relevant, Dr. Stathis Poulakidas acted within the scope of his employment at Presence Central and Suburban Hospitals Network d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER:     This Defendant admits only that he acted within the scope of his employment by Ascension at the time of providing care to Plaintiff, as supported by medical records, the remaining allegations contained in Section III, Paragraph 38 of Plaintiff's Second Amended Complaint are denied.**

### IV. FACTUAL ALLEGATIONS

39.     On February 25, 2023, Anthony set himself on fire in an act of self-harm.

**ANSWER:     Based upon information and belief, this Defendant admits the allegation contained in Section IV, Paragraph 5 of Plaintiff's Second Amended Complaint.**

40.     As a result of his self-immolation on February 25, 2023, Anthony suffered third-degree, circumferential burns to his leg.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 40 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

41.     After Anthony set himself on fire, a Wexford nurse notified Dr. Henze and Dr. Kucera of the incident.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 41 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

42.     Dr. Henze and Kucera both assessed Anthony's wounds on February 25, 2023.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 42 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

43.     At the time that Dr. Henze and Dr. Kucera assessed Anthony's wounds on February 25, 2023, Anthony's burns were yellow in color and had blisters that were "bursting during reassessment of restraints."

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 43 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

44.     In response to Anthony's burns on February 25, 2023, Dr. Henze ordered Silvadene and directed the nurses to wrap the wound in soft, dry gauze dressing.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 44 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

45.     Dr. Henze prescribed Tylenol to Anthony.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 45 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

46.     Dr. Henze did not prescribe any other medications to treat the pain associated with Anthony's burns.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 46 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

47.     Dr. Henze ordered Anthony to be placed in four-point restraints in response to his act of setting himself on fire.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 47 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

48.     Dr. Kucera ordered Anthony to be placed in four-point restraints in response to his act of setting himself on fire.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 48 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

49.     Anthony complained about the four-point restraints to a Wexford nurse because they were extremely painful due to his burn injuries.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 49 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

50.     The Wexford nurse called Dr. Kucera multiple times to request that she be permitted to remove Anthony's restraints.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 50 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

51.     The Wexford nurse also called Dr. Henze multiple times to request that she be permitted to remove Anthony's restraints.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 51 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

52.     Dr. Kucera advised the Wexford nurse that Anthony must remain in four-point restraints.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 52 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

53.     Dr. Henze also advised the Wexford nurse that Anthony must remain in four-point restraints.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 53 of**

**Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

54.     Illinois Department of Corrections policy 04.04.103 (hereinafter referred to as "the Restraint Policy") provides several restrictions on the use of restraints for mental health purposes, including the following:

a.     Restraints for mental health purposes shall be applied under medical supervision and shall only be used when other, less restrictive measures have been found to be ineffective and to ensure the immediate physical safety of the individual in custody, staff member or others;

b.     Restraints shall not be used as a disciplinary measure;

c.     Restraint implementation shall be applied by order of a psychiatrist, or if a psychiatrist is not available, a physician, physician's assistant, nurse practitioner or a licensed clinical psychologist;"

d.     The initial order for use of restraints shall not exceed four hours. Should subsequent orders become necessary, the time limit may be extended, but no subsequent order for restraint extension shall be valid for more than 16 hours beyond the termination of the initial order. If further restraint is required beyond the initial order and one extension, a new order shall be issued pursuant to the requirements provided herein and the Regional Mental Health Administrator shall be notified; and

e.     Restraints shall be applied in a bed located in a crisis care area, or similar setting that is in view of staff. Immediately following the placement of an individual in custody in restraints for mental health purposes, medical staff shall conduct an examination of the individual in custody to ensure that: a) No injuries exist; b) Restraint equipment is not applied in a manner likely to result in injury; and c) There is no medical contraindication to maintaining the individual in custody in restraints.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 54 of Plaintiff's Second Amended Complaint, including subparagraphs a. through e., and therefore can neither admit nor deny said allegations. Further, this Defendant denies that Plaintiff accurately restated restrictions listed in Illinois Department of Corrections policy 04.04.103.**

55.     Wexford staff are required to follow the policies of the Illinois Department of Corrections, including the Restraint Policy.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 55 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

56.     Dr. Henze and Dr. Kucera authorized the use of restraints on Anthony despite his serious injury and the medical contraindication that restraints would further compromise circulation in a limb where circulation was already severely compromised.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 56 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

57.     At all times relevant, Dr. Kucera had no training in the treatment of burn wounds.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 57 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

58.     At all times relevant, Dr. Kucera did not have any qualifications to direct the medical care of physical injury.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 58 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

59.     At all times relevant, Dr. Kucera was a clinical psychologist, not a medical doctor.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 59 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

60.     On February 26, 2023, Anthony exhibited the following symptoms:

a.     There were burn blisters on Anthony's lower right leg;
b.     Anthony was complaining of pain;
c.     Anthony's right foot was swollen;
d.     Anthony had no sensation in his right leg;
e.     Anthony's right shin was warm to the touch;
f.     Anthony's right leg has palpable pulses;
g.     There were blisters on Anthony's right shin;
h.     Anthony's right leg was red, brown, and white in certain areas.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 60 of Plaintiff's Second Amended Complaint, including subparagraphs a. through h., and therefore can neither admit nor deny said allegations.**

61.     Dr. Kucera and Dr. Henze were aware of the condition of Anthony's leg on February 26, 2023.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 61 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

62.     Anthony's symptoms on February 26, 2023, are indicative of compartment syndrome.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 62 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

63.     Compartment syndrome is a surgical emergency.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 63 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

64.     Upon learning of Anthony's condition on February 26, 2023, Dr. Henze and Dr. Kucera ordered that Anthony be kept in four-point restraints.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 64 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

65.     Upon learning of Anthony's condition on February 26, 2023, Dr. Henze and Dr. Kucera failed to:

   a.     Allow Anthony movement outside of his restraint;
   b.     Order any therapeutic treatment for his symptoms;
   c.     Develop or implement any treatment plan to direct the treatment of Anthony's wounds;
   d.     Make any efforts to refer Anthony to a hospital;
   e.     Make any efforts to refer Anthony to a burn specialist;
   f.     Ensure that Anthony's circulation or vascular status was monitored;
   g.     Order Anthony's release from four-point restraints;
   h.     Make any effort to collaborate with other medical providers regarding Anthony's care;
   i.     Repeatedly assess the need for restraints;

j.      Take any other reasonable steps to treat Anthony's wound.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 65 of Plaintiff's Second Amended Complaint, including subparagraphs a. through j., and therefore can neither admit nor deny said allegations.**

66.      Burn injuries tend to evolve and change such that close attention to their development is required to manage them.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 66 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

67.      Dr. Henze and Dr. Kucera knew that neither of them had qualifications or training in the treatment of serious burns yet directed the treatment and care of Anthony's wounds.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 67 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

68.      Anthony's burn compromised blood flow to his leg.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 68 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

69.      Dr. Henze and Dr. Kucera knew that Anthony's burn would compromise blood flow to his leg.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 69 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

70.      Dr. Henze and Dr. Kucera knew that the blood flow to Anthony's leg would be further compromised by keeping him in restraints.

**ANSWER:      This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 70 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

71.     Dr. Henze and Dr. Kucera knew that Anthony's wounds would significantly worsen if not treated appropriately.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 71 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

72.     Dr. Henze and Dr. Kucera's management of Anthony's burns, wounds, and restraints collectively and individually breached the standard of care.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 72 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

73.     On February 27, 2023, Stateville Lieutenants Cruz and Powell released Anthony from four-point restraints without permission from Dr. Henze or Dr. Kucera because they recognized that the four-point restraints were cruel and unusual given Anthony's medical condition.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 73 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

74.     On February 28, 2023, Dr. Henze finally referred Anthony to the hospital at Amita Health Aurora.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 74 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

75.     By the time Anthony arrived at the hospital, he no longer had a pulse in his right leg.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 75 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

76.     By the time Anthony arrived at the hospital, his treaters believed there was a high probability of imminent-life-threatening deterioration that could result in multi-organ failure.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 76 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

77.    Soon after Anthony arrived at the hospital, he received an escharotomy, a surgical procedure that involves cutting through burned skin to relieve pressure and improve circulation.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 77 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

78.    Anthony's treating providers noted that Anthony's presentation to the hospital was delayed.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 78 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

79.    Anthony's treaters at the hospital noted that "he has a high likelihood of loss of limb given the extent of injury and delay in presentation."

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 79 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

80.    On March 1, 2023, Anthony received a skin graft on his right leg.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Paragraph 80 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

### A. Upon returning to Department of Corrections custody, Anthony developed an infection.

81.    Anthony was discharged from the hospital on March 16, 2023, at which time his skin graft and wounds were in good condition.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A,**

Paragraph 81 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.

82.     In the afternoon of March 16, 2023, Anthony was transferred back to Stateville for care of his right leg burn and skin graft.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 82 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

83.     On March 16, 2023, Anthony arrived at Stateville with his skin graft intact and without signs of infection.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 83 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

84.     Upon returning to Stateville, Anthony required appropriate wound care treatment, including dressing changes and antibiotic ointments, to prevent the development of any infections.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 84 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

85.     On March 23, 2023, Anthony's wound began to show signs of infection, including slough and a foul odor.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 85 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

86.     On March 24, 2023, Wexford staff believed that Anthony's skin graft was infected.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 86 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

87.     On March 24, 2023, Anthony's wound was, in fact, infected.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A,**

Paragraph 87 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.

88.     In response to the infection, Wexford Nurse Practitioner Brianna Orr prescribed one tablet of Augmentin 875/125 by mouth once per day.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 88 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

89.     No other treatments or medications were given to Anthony in response to the infection.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 89 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

90.     Wexford practitioners did not order a wound culture or refer Anthony to the hospital or specialist upon learning of his infection.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 90 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

91.     More than a week after Wexford staff learned of the infection, Anthony was transported to Amita Health Aurora and seen by Dr. Shabirhusain Abadin, MD, at AMITA Medical Group.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 91 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

92.     Dr. Abadin removed Anthony's dressing and observed that Anthony's wound site was infected and not fully healing.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 92 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

93.     Dr. Abadin recommended that Anthony continue receiving antibiotics and scheduled him to return to AMITA Health Aurora for a three-month follow-up.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 93 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

94.     Anthony's 10-day Augmentin prescription elapsed on the same day that he saw Dr. Abadin.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 94 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

95.     At the time his Augmentin prescription elapsed, Anthony's wound was still infected.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 95 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

96.     Contrary to Dr. Abadin's instruction, Anthony's Augmentin prescription was not re-ordered.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection A, Paragraph 96 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

**B. Wexford provided inadequate care and treatment of Anthony's infection, which had so severely deteriorated throughout the month of April 2023 to the point where the bone was exposed.**

97.     Upon returning to Stateville from his appointment with Dr. Abadin on April 3, 2023, Anthony did not receive any antibiotics until April 29, 2023.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 97 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

98.     Throughout the month of April 2023, Anthony's wound continued to worsen.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B,**

Paragraph 98 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.

99.     Nurse McGladdery, Nurse Practitioner Bruckner, and Dr. Couture were responsible for Anthony's wound care and treatment.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 99 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

100.     Nurse McGladdery was responsible for evaluating Anthony's wound nearly every day between April 3, 2023, and May 5, 2023.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 100 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

101.     Nurse Practitioner Bruckner was responsible for evaluating Anthony's wound multiple times a week between April 3, 2023, and May 5, 2023.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 101 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

102.     Dr. Couture was responsible for evaluating Anthony's wound on a weekly basis between April 3, 2023, and May 5, 2023.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 102 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

103.     Prior to their treatment of Anthony Lee, Nurse McGladdery and Nurse Practitioner Bruckner had never cared for or treated a burn or graft site wound.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 103 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

104.     Nurse McGladdery, along with other Wexford practitioners, falsely noted that there were no signs of infection at Anthony's wound, even though they knew that the infection was worsening.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 104 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

105. By April 12, 2023, every Wexford medical provider responsible for Anthony's care knew that Anthony's graft had failed, his wound was severely infected and rapidly worsening, and that he needed to go to a hospital and/or burn specialist.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 105 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

106. Throughout the course of Anthony's care, Anthony repeatedly asked Wexford staff for pain medication due to the excruciating pain at his wound site.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 106 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

107. Throughout the course of Anthony's care, Nurse McGladdery repeatedly assured other medical providers that his wound was healing, even though he knew it was rapidly deteriorating.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 107 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

108. Prior to April 27, 2023, Nurse McGladdery, Nurse Practitioner Bruckner, Eileen Couture, and other Wexford staff became aware that Anthony's wound had deteriorated so severely that his bone was exposed and visible yet did not take reasonable and necessary steps to facilitate a referral to a hospital or specialist or otherwise adequately treat his infection.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 108 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

109. On April 29, 2023, Anthony received a wound culture test and an Augmentin prescription.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 109 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

110. The results of the wound culture reflected that Anthony's wound was infected with three strains of bacteria, one of which is intrinsically resistant to Augmentin and two of which are likely resistant to Augmentin.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 110 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

111. After receiving the wound culture results, Nurse Practitioner Bruckner ordered Anthony to be placed on Gentamicin, an antibiotic.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 111 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

112. After consulting with Medical Director Henze, Nurse Practitioner Bruckner changed Anthony's medication regimen to Zosyn and Bactrim.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 112 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

113. Nurse Practitioner Bruckner also prescribed and administered non-steroidal anti-inflammatory injections between May 1, 2023, and May 5, 2023.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 113 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

114. Dr. Couture told Anthony that he should just take the antibiotics and "hold off" on the hospital because Wexford denied his authorization.

**ANSWER:** **This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 114 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

115.    Throughout the month of April and the first week of May, Defendants continued to administer treatment that they knew was ineffective instead of facilitating a referral to a hospital or specialist.

**ANSWER:    This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 115 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

116.    Between April 4, 2023, and May 5, 2023, Nurse McGladdery repeatedly assured Anthony that his wound was healing, even though he knew it was rapidly deteriorating.

**ANSWER:    This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 116 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

117.    Nurse McGladdery admitted to Anthony that he and the other members of his care team knew his bone was showing well before they referred him to another provider. Nurse McGladdery admitted that the staff was trying to handle the issue themselves despite knowing Anthony's condition was worsening.

**ANSWER:    This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection B, Paragraph 117 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

**C. When Anthony is referred to the hospital, Dr. Poulakidas performed an unnecessary above-the-knee amputation.**

118.    Anthony was finally transported to Amita Health Aurora on May 5, 2023. This was the first time he was sent to the hospital, a specialist, or outside provider in over a month.

**ANSWER:    This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection C, Paragraph 118 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

119.    Anthony was evaluated by Dr. Stathis Poulakidas at Amita Health Aurora, who determined that Anthony had a rejected graft, a wound on his lower right leg that had been "worsening," and exposed tibia bone.

**ANSWER:    This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection C, Paragraph 119 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

120.     When Anthony was evaluated by Dr. Poulkidas, Anthony's bone was infected.

**ANSWER:     This Defendant does not have sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Section IV, Subsection C, Paragraph 120 of Plaintiff's Second Amended Complaint, and therefore can neither admit nor deny said allegations.**

121.     Depending on the severity, a bone infection can be treated by surgery or other methods such as antibiotics.

**ANSWER:     This Defendant denies that the allegations contained in Section IV, Subsection C, Paragraph 121 of Plaintiff's Second Amended Complaint, as it improperly describes treatment.**

122.     Many bone infections can be successfully treated without surgery, especially when they occur in individuals who are in their 20s, such as Anthony.

**ANSWER:     This Defendant denies that the allegations contained in Section IV, Subsection C, Paragraph 122 of Plaintiff's Second Amended Complaint, as it is improper generalization and characterization of treatment.**

123.     Dr. Poulakidas did not conduct a reasonable investigation into the condition of Anthony's leg, did not consult with a physician who specialized in plastic surgery, and did not order any imaging of Anthony's leg.

**ANSWER:     This Defendant denies the allegations contained in Section IV, Subsection C, Paragraph 123 of Plaintiff's Second Amended Complaint.**

124.     Dr. Poulakidas decided that Anthony's leg would likely need to be amputated by looking at pictures taken on his colleague's phone, prior to ever physically evaluating Anthony's leg himself.

**ANSWER:     This Defendant denies the allegations contained in Section IV, Subsection C, Paragraph 124 of Plaintiff's Second Amended Complaint.**

125.     Dr. Poulakidas also relied on these cell phone pictures to determine that Anthony's infection was likely due to his own manipulation of the wound, but there was no evidence that Anthony had interfered with his wound. In fact, Anthony had not interfered with his wound.

**ANSWER:     This Defendant denies that Plaintiff had not interfered with his wound and denies the remaining allegations as stated as vague.**

126.     When Dr. Poulakidas evaluated Anthony's bone, it demonstrated ulceration, which is contrary to the conclusion that the bone was entirely unsalvageable.

Case: 1:25-cv-01772 Document #: 82 Filed: 06/26/25 Page 25 of 33 PageID #:1116

**ANSWER:     This Defendant denies the allegations contained in Section IV, Subsection C, Paragraph 126 of Plaintiff's Second Amended Complaint.**

127.    Dr. Poulakidas advised Anthony that he would require an above-the knee amputation and did not attempt to treat Anthony with alternative treatments before deciding to amputate his leg.

**ANSWER:     This Defendant denies the allegations contained in Section IV, Subsection C, Paragraph 127 of Plaintiff's Second Amended Complaint.**

128.    There were other treatment options available to Dr. Poulakidas that could have prevented Anthony from losing his leg, but Dr. Poulakidas did not employ any of those treatment options. Anthony was a candidate for more conservative treatments that did not require the amputation of a limb.

**ANSWER:     This Defendant denies the allegations contained in Section IV, Subsection C, Paragraph 128 of Plaintiff's Second Amended Complaint.**

129.    On May 6, 2023, Dr. Poulakidas amputated Anthony's leg above the knee.

**ANSWER:     Admit only that that Dr. Poulakidas provided certain medical care as reflected in the medical record and deny remaining allegations as stated.**

130.    Anthony's leg was more likely than not salvageable at the time Dr. Poulakidas decided to amputate it.

**ANSWER:     This Defendant denies the allegations contained in Section IV, Subsection C, Paragraph 130 of Plaintiff's Second Amended Complaint.**

131.    Anthony did not self-harm between the time that he received his skin graft and the time of his amputation.

**ANSWER:     Denied.**

132.    Anthony was compliant with his medication regimen between March 16, 2023, and the time of his amputation.

**ANSWER:     Denied.**

## COUNT I: 42 U.S.C. 1983
## Against Defendant Wexford Health Sources, Inc.

The allegations contained in Section IV, Count I of Plaintiff's Second Amended Complaint

at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer

thereto. To the extent any of the allegations contained in Section IV, Count I of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

## COUNT II: 42 U.S.C. 1983
### Against Defendant Dr. Marlene Henze

The allegations contained in Section IV, Count II of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count II of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

## COUNT III: 42 U.S.C. 1983
### Against Defendant Dr. Dianna Kucera

The allegations contained in Section IV, Count III of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count III of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

## COUNT IV: 42 U.S.C. 1983
### Against Defendant Nurse Mitchell McGladdery

The allegations contained in Section IV, Count IV of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count IV of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

## COUNT V: 42 U.S.C. 1983

**Against Defendant Nurse Practitioner Bruckner**

The allegations contained in Section IV, Count V of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count V of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

## COUNT VI: 42 U.S.C. 1983
### Against Defendant Dr. Eileen Couture

The allegations contained in Section IV, Count VI of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count VI of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

## COUNT VII: Medical Malpractice, Negligence, Respondent Superior
### Against Defendant Wexford Health Sources, Inc.

The allegations contained in Section IV, Count VII of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count VII of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

## COUNT VIII: Medical Malpractice, Negligence
### Against Defendant Dr. Marlene Henze

The allegations contained in Section IV, Count VIII of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count VIII of

Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

### COUNT IX: Medical Malpractice, Negligence
### Against Defendant Dr. Dianna Kucera

The allegations contained in Section IV, Count IX of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count IX of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

### COUNT X: Medical Malpractice, Negligence
### Against Defendant Nurse Mitchell McGladdery

The allegations contained in Section IV, Count X of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count X of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

### COUNT XI: Medical Malpractice, Negligence
### Against Defendant Nurse Practitioner Helen Bruckner

The allegations contained in Section IV, Count XI of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count XI of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

### COUNT XII: Medical Malpractice, Negligence
### Against Defendant Dr. Eileen Couture

The allegations contained in Section IV, Count XII of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count XII of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

### COUNT XIII: Medical Malpractice, Negligence
### Against Defendant Dr. Stathis Poulakidas

274.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:    This Defendant adopts and incorporates its answers to each and every allegation contained in Sections I through IV, including Subsections A through C, Counts I through XII, Paragraphs 1 through 273 of Plaintiff's Second Amended Complaint as its answer to Section IV, Count XIII, Paragraphs 1 through 273 of Plaintiff's Second Amended Complaint as though fully set forth herein.**

275.    At all relevant times, Dr. Poulakidas owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER:    This Defendant admits only to those duties imposed upon him by law but denies that Paragraph 275 of Section IV of Count XIII of Plaintiff's Second Amended Complaint accurately sets forth those duties.**

276.    Dr. Poulakidas breached his duty to provide reasonable medical care to Anthony Lee.

**ANSWER:    This Defendant denies the allegations contained in Section IV, Count XIII, Paragraph 276 of Plaintiff's Second Amended Complaint.**

277.    Dr. Poulakidas was negligent.

**ANSWER:    This Defendant denies the allegations contained in Section IV, Count XIII, Paragraph 277 of Plaintiff's Second Amended Complaint.**

278.    As a result of Dr. Poulakidas's negligent acts and omissions, Wexford employees and/or agents Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER:    This Defendant denies the allegations contained in Section IV, Count XIII, Paragraph 278 of Plaintiff's Second Amended Complaint.**

279.    Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER:** This Defendant admits only that Plaintiff attached an Affidavit and Report to his Second Amended Complaint, but denies its sufficiency, and denies that Plaintiff is entitled to recovery.

WHEREFORE, the Defendant, **STATHIS POULAKIDAS, M.D.,** having fully responded to Plaintiff's Second Amended Complaint at Law, denies that Plaintiff is entitled to relief, and prays that judgment be entered in its favor and against Plaintiff, together with costs and fees and for such other and further relief as this Court deems just and proper.

**COUNT XIV: Medical Malpractice, Negligence, Respondent Superior
Against Defendant Presence Central and Suburban Hospitals Network, an
Illinois not-for-profit corporation d/b/a Ascension Mercy, and also d/b/a AMITA
Health Mercy Medical Center, a/k/a AMITA Health Aurora, also d/b/a Prime
Healthcare Services, Inc. a/k/a Prime Healthcare d/b/a Mercy Medical Center**

The allegations contained in Section IV, Count XIV of Plaintiff's Second Amended Complaint at Law are not directed at this Defendant, and for that reason, this Defendant makes no answer thereto. To the extent any of the allegations contained in Section IV, Count XIV of Plaintiff's Second Amended Complaint at Law could be construed to be directed towards this Defendant, this Defendant denies each and every allegation contained therein.

**V. Request for Relief**

WHEREFORE, Plaintiff, Anthony Lee, respectfully requests judgment against Defendants Wexford, Henze, Kucera, McGladdery, Bruckner, Couture, Presence Central and Suburban Hospitals Network, an Illinois not-for-profit corporation d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora, also d/b/a Prime Healthcare Services, Inc. a/k/a Prime Healthcare d/b/a Mercy Medical Center, and Dr. Poulakidas jointly and severally, for the following:

a.  An award of compensatory and punitive damages;

b.  An award of full costs and attorneys' fees arising out of this litigation pursuant to 42 U.S.C. § 1988(b); and

c.      Any other further relief this Court may deem just and appropriate.

**ANSWER:    This Defendant denies that Plaintiff is entitled to any relief, including the relief requested in Section V of Plaintiff's Second Amended Complaint, including subparagraphs a. through c.**

WHEREFORE, the Defendant, **STATHIS POULAKIDAS, M.D.,** having fully responded to Plaintiff's Second Amended Complaint at Law, denies that Plaintiff is entitled to a relief, and prays that judgment be entered in its favor and against Plaintiff, together with costs and fees and for such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

NOW COMES the Defendant, **PRESENCE CENTRAL and SUBURBAN HOSPITALS d/b/a/ ASCENSION MERCY MEDICAL CENTER,** by and through his attorneys, **HALL PRANGLE LLC**, and pleads the following Affirmative Defenses in the alternative and without prejudice to the denials and other statements made in these pleadings:

## CONTRIBUTORY NEGLIGENCE

1.      At all times relevant as alleged in the Plaintiff's Complaint, the Plaintiff, ANTHONY LEE, owed a duty to himself to exercise ordinary care to avoid injury to himself.

2.      The injuries alleged in the Plaintiff's Complaint are a direct and proximate result of the careless and negligent acts by the Plaintiff, ANTHONY LEE, including but not limited to:

a.      Plaintiff lighting himself on fire on February 25, 2023, as well as additional time(s) after February 25, 2023;

b.      Failing to keep his self-inflicted burn injury wounds free from harmful bacteria or contamination due to Plaintiff's own conduct of repeatedly picking at his wounds despite being told not to do so.

3.     Any amount of judgment for damages entered against this Defendant in favor of the Plaintiff, ANTHONY LEE, shall be reduced by the percentage to which the Plaintiff's own negligence or fault contributed to such damages. If the Plaintiff's own negligence or fault contributing to said damages is determined to be in excess of 50%, then judgment is prayed for in favor of this Defendant and against the Plaintiff.

## ASSUMPTION OF RISK

4.     The Plaintiff, ANTHONY LEE, assumed the risk of his own conduct.

## FAILURE TO MITIGATE DAMAGES

5.     The Plaintiff, ANTHONY LEE, failed to mitigate his damages.

6.     If the negligence of any other party or potential parties was the proximate cause of the occurrence, then Defendant is entitled to a reduction of the damages awarded, if any, of the proportion of fault attributed to any other parties or potential defendants.

7.     This Defendant hereby gives notice that it may rely on other defenses if and when such defenses become known during the course of litigation, and hereby reserves the right to amend its answer to assert any other defenses as become known or available.

## DEMAND FOR TRIAL BY JURY

 This Defendant demands a trial by jury on all issues so triable.


Respectfully Submitted,

**HALL PRANGLE LLC**

/es/  Alina Morhaim
One of the Attorneys for Defendant
**STATHIS POULAKIDAS, M.D.**

Michele C. Anderson (manderson@hallprangle.com)
Matthew J. Kaminski (mkaminski@hallprangle.com)
Alina Morhaim (amorhaim@hallprangle.com)
**HALL PRANGLE LLC**

200 S. Wacker Drive, Suite 3300
Chicago, Illinois 60606
Tel: (312) 345-9600 |Fax: (312) 345-9608
Docket@hallprangle.com

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of this document to be transmitted to all counsel via CM/ECF on June 26, 2025.

/s/Alina Morhaim