**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony Lee, | ) | |
| | ) | |
| Plaintiff, | ) | No: 25-cv-01772 |
| | ) | |
| v. | ) | |
| | ) | |
| Wexford Health Sources, Inc., et al, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**THIRD AMENDED COMPLAINT**

Plaintiff, Anthony Lee, by and through his attorneys, Romanucci and Blandin, LLC, moves this Honorable Court for Leave to File his Third Amended Complaint. Plaintiff states as follows:

## I. Background

Plaintiff alleges that individual Defendants—medical professionals who were involved with Mr. Lee's medical care while incarcerated—failed to provide adequate medical care for his severe burn and caused his leg to be amputated. Plaintiff also alleges a *Monell* claim against Wexford Health Sources (Wexford), the medical contractor for the Illinois Department of Corrections (IDOC) at the time of his injury, claiming Wexford maintained official policies and widespread practices that were the moving force behind his injuries.

On February 20, 2023, Plaintiff filed his original Complaint. ECF 1. On April 23, 2025, Plaintiff filed his First Amended Complaint as a matter of course pursuant

to Fed. R. Civ. P. 15 (a)(1)(B). ECF 35. Plaintiff filed his Second Amended Complaint on May 6, 2025, to add a viable Defendant within the applicable statute of limitations. ECF 50. Since filing the Second Amended Complaint, the parties have engaged in extensive discovery, including the depositions of all individual Defendants. These depositions yielded substantial information concerning the medical care Mr. Lee received while in Defendants' custody, as well as Wexford's corporate policies and practices. In light of this testimony, Plaintiff now seeks leave to amend the Complaint to conform the pleadings to the evidence adduced in discovery. See Ex. 1, Proposed Third Amended Complaint.[1] Defendants Wexford, Henze, Bruckner, and Couture (collectively, the Wexford Defendants) are represented by the same counsel and object to this motion. Plaintiff has not received any indication from Defendants Presence, Poulakidas, McGladdery, or Kucera that they object to Plaintiff's proposed amendments.

Plaintiff filed a status report on behalf of the parties on April 2, 2026, which conveyed to the Court his intention to file a motion for leave to amend the complaint[2]

---

[1] Plaintiff has filed a redlined version of the Proposed Amended Complaint. Upon granting of this motion, Plaintiff will file a clean version.

[2] Defendants do not contend that the delay between Plaintiff's notice of intent to amend in the status report and the filing of the instant motion caused them any prejudice. To the extent the Court still requires any information regarding why Plaintiff did not file the instant motion more quickly after the April 2 status report, Plaintiff provides the following: Plaintiff received the transcript from Dr. Henze's deposition on April 14, 2026. On April 16, Mr. Lee's lead counsel, Paul McMahon, went out of the country for a planned vacation, and was gone for the rest of April. Mr. Lee's other counsel, undersigned, began trial in the matter of *Raymond Comer v. City of Chicago, et al.,* 2023L008085 in the Circuit Court of Cook County on April 20, and remained on trial through April 29. Plaintiff circulated a copy of the Proposed Amended Complaint to defense counsel to confirm whether this motion would be opposed on May 7. Given Plaintiffs' counsel's overlapping trial and travel schedules, this was the earliest date that Plaintiff's counsel could formulate a draft with the necessary amendments after reviewing Dr. Henze's deposition transcript (which formed the basis for most of the additions to the Complaint). On May 11,

as well as the parties' intention to extend the fact discovery deadline. Plaintiff filed an unopposed motion to extend fact discovery, which was granted, and the deadline to complete fact discovery is now September 25, 2026. ECF 124.

In the original complaint, Plaintiff alleged that Mr. Lee self-immolated during a serious mental health crisis at Joliet Treatment Center, after which Dr. Marlene Henze failed to timely refer him to the hospital. ECF 1 at ¶¶ 35-36, 61. As a result, Mr. Lee remained at Joliet for two days while suffering a medical and surgical emergency before being sent to the hospital, despite Dr. Henze knowing the substantial risks attendant to his injury. Id. at ¶¶ 65-75. By the time he was finally sent to the hospital, the surgeon who conducted his skin graft noted that he had "a high likelihood of loss of limb given the extent of injury and delay in presentation." Id. at ¶75. Plaintiff alleged that Dr. Henze's conduct constituted medical malpractice and a violation of Mr. Lee's constitutional rights. Id. at ¶¶ 149-164, 232-236. Plaintiff also alleged that a moving force behind this conduct was Wexford's unconstitutional policies and widespread practices of delaying transfers of patients to the hospital, disincentivizing providers from referring patients to the hospital, and understaffing medical providers at IDOC facilities. Id. at ¶¶ 145-147. Finally, Plaintiff alleged that Wexford is liable for the malpractice of its employees and agents. Id. at ¶¶ 226-229. These allegations remain in Plaintiff's Proposed Third Amended Complaint.

For most of the discovery period, evidence has tended to show that Mr. Lee's on-

---

the Wexford Defendants confirmed that they objected to the motion, after which Plaintiff asked for clarification as to the basis of the objection, which Defendants provided on May 14. Plaintiff brings this Motion on May 20, shortly after concluding this conferral with counsel.

site nurses told Dr. Henze, who was not at the facility over the weekend the injuries occurred, about the severity of Mr. Lee's burn and changes regarding his symptoms.

On February 25, Nurse Priscilla Parmore documented the following:

> At approximately 10:20 p.m., a code 8 was called for Resident whom had smoke from room. Resident brought to triage in dayroom in dorm 7. [Vital signs] were taken and {within normal limits]. Resident had a tshirt, toilet paper, and a plastic bag wrapped around r[ight] lower leg/calf/ankle and it was burned. **Writer assessed burn and notified Dr. Henze. Dr. Henze ordered silver nitrate BID and to wrap wound**. Writer also notified Dr. Kucera (psych MD) and 4 pt. restraints were ordered.

Ex. 2, Paramore February 25 Progress Notes at 1 (emphasis added). She also documented that Mr. Lee's skin had "light brown/dark brown blisters" (Id. at p. 1), the size of the burn was the entire length/circumference of the right leg (Id. at p. 3). blisters were "bursting during reassessment of restraints," (Id. at p. 4), and that she paged Dr. Henze because it was a burn of larger than minor size (Id. at p. 4). In her deposition, she testified that she notified Dr. Henze of these symptoms. Ex. 3, Paramore Dep. at 52:15-55:21.

On February 26, Nurse Paramore documented the following regarding her assessment of Mr. Lee:

> "Residents r[ight] foot is swollen and no sensation to the extremity. Pulses palpable, shin warm to touch. Blisters present on shin. Shein is red/d[a]rk brown and white in certain areas around leg/ankle. **Writer notified Dr. Henze of assessment.** Per Dr. Henze, elevate r[ight] leg and can apply ice as needed.

Ex. 4, Paramore February 26 Progress Note (emphasis added). An incident report from February 26, 2023, written by Nurse Paramore notes that Mr. Lee's foot was "significantly more swollen" than the previous day, "blisters were present," and she

"paged Dr. Henze to notify Resident Lee's leg was worse than the previous day when first assessed." Ex. 5, Paramore Incident Report. She also documented that she "asked Dr. Henze if she wanted [Mr. Lee] to go to the hospital and [Dr. Henze] said 'no I will see him tomorrow.'" Id. She documented that when she asked Dr. Henze how to elevate Mr. Lee's leg while he was in four-point restraints, Dr. Henze responded, "not my problem." Id. Paramore again testified that she notified Dr. Henze of each symptom documented in her notes. Ex. 3, Paramore Dep. at pp. 59:22-61:1, 63:12-64:17.

In her deposition, Dr. Henze testified that she was in St. Louis for the weekend attending a flea market. Ex. 6, Henze Dep. at 40:9-42:3. Because of her travel, Dr. Henze's assessment of Mr. Lee was limited to what Wexford nurses, primarily Priscilla Paramore, told her by telephone, as opposed to personally examining him, until she returned to JTC the following Monday. Id. at 206:17-207:9. Dr. Henze testified that she had been told Mr. Lee "set a little tissue on fire" near his ankle and foot, and that she probably would have sent him to the hospital if she knew the information which Ms. Paramore documented in her note. Id. at 57:14-58:15. Referring to one of Ms. Paramore's notes, Dr. Henze testified, "Had I known everything that's in this note, I would have sent him to the hospital." Id. at 73:17-19.

Dr. Henze also testified that she was "always on call" regardless of where she was and that there were no physicians on site at JTC on weekends. Id. at 40:12-41:10, 160:9-21. She testified she was not required to notify anyone when she left town—as long as she was available by phone, she could be anywhere. Id. at 160:18-161:1. The only backup was Dr. Funk, whom she would need to proactively contact if she wanted

coverage. Id. at 40:19-41:6. Finally, she testified that providing ice within a cloth to Mr. Lee's burn would have been within the standard of care. Id. at 201:4-19.

Plaintiff now seeks to amend his complaint to conform his pleadings to these facts learned in discovery. Primarily, his amendments incorporate allegations, consistent with Dr. Henze's testimony, that 1) Wexford nurses failed to inform Dr. Henze of the extent of Mr. Lee's injuries, 2) Wexford maintained an unconstitutional on-call policy in which physicians could travel such that inmates had access to no physicians on the weekends and 3) Dr. Henze failed to order ice for Mr. Lee's burn. See Ex. 1, Proposed Amended Complaint. Plaintiff has also made technical corrections, such as adjusting dates that were previously misstated. **These amendments do not add any additional claims or defendants;** they only seek to conform the pleadings to discovery by incorporating important factual allegations to clarify the legal theories which Plaintiff is pursuing.

## II.    Discussion

As a threshold matter, this motion is governed by Rule 15, not Rule 16. Where a deadline has not been set for the amendment of pleadings, Rule 15(a) governs the propriety of an amendment to the complaint, as opposed to the more stringent standard contemplated by Rule 16. *See Hunter v. WirelessPCS Chicago, LLC*, No. 18 CV 980, 2022 WL 19766905, at *1 (N.D. Ill. Mar. 17, 2022) (Rule 15 applied where no scheduling order had been entered).  The Court has only entered deadlines regarding the completion of fact discovery and initial disclosures. ECF 87, 124. There is no scheduling order establishing a deadline to amend the complaint in this case. Indeed, upon learning in the status report on April 2 that Plaintiff intended to amend the

Complaint, the Court only cautioned the Plaintiff to ensure to move for an extension of time to complete fact discovery if such a motion would impact the discovery date. ECF 122. This Court has not imposed nor have Defendants sought any time limitations pursuant to Rule 16 on Plaintiff's ability to amend the complaint, so this motion should be subject to the more lenient Rule 15 analysis.

### A. Plaintiff's amendments conform the pleadings to discovery.

Plaintiff seeks to amend the Complaint to conform the pleadings to facts learned in discovery. "A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts in this circuit have recognized that justice requires granting leave to amend where a plaintiff seeks to conform the pleadings to facts uncovered through discovery. *See Hunter v. WirelessPCS Chicago, LLC,* No. 18 CV 980, 2022 WL 19766905 (N.D. Ill. Mar. 17, 2022); *Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, No. 12-1099, 2014 WL 12734077, at *2 (C.D. Ill. Oct. 24, 2014) ("The Court finds amendment to be particularly appropriate where it is sought in an attempt to conform to facts surfacing during discovery").

In conforming their pleadings to discovery, Plaintiffs may also adjust their legal theories to those which are supported by the facts. The Seventh Circuit recently said, "[W]e have made this point repeatedly: 'The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories.' […] Also, when a complaint does present legal theories, those theories may later be altered or refined. *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023) (internal citations omitted). "The law of this circuit

affords flexibility for a plaintiff to adjust his or her legal theory over the course of litigation. The Court finds amendment to be particularly appropriate where it is sought in an attempt to conform to facts surfacing during discovery." *Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, No. 12-1099, 2014 WL 12734077, at *2 (C.D. Ill. Oct. 24, 2014).

In *Hunter v. WirelessPCS Chicago, LLC*, No. 18 CV 980, 2022 WL 19766905, at *1 (N.D. Ill. Mar. 17, 2022), the plaintiffs filed an initial complaint against corporate and individual defendants. After the Rule 30(b)(6) deposition of the corporate defendants, the plaintiffs moved for leave to amend, seeking to add allegations that would support a piercing of the corporate veil, which was an additional means of imposing liability on the individual defendants who were already in the case. *Id*. Before granting leave to amend under Rule 15(a), the court noted two important things about the plaintiffs' amendments. First, the plaintiffs had "timely filed their motion within two months of the last deposition in which they obtained discovery that is pertinent to their proposed amendment, and during an extremely busy time in the case," so there was no undue prejudice regarding the timing of the amendment. Second, they proposed no new claims or parties, but rather included "additional allegations to support a theory of liability that Defendants have known for some time that Plaintiffs intended to pursue," the court granted leave. *Id*. at *2.

Both of those circumstances exist in this case. First, Plaintiff files this motion a little under two months after Dr. Henze's March 30 deposition, the deposition most pertinent to these amendments. Plaintiff notified Defendants of the intent to file this

motion in conferring on the April 2 status report, circulated the proposed amendments to all counsel earlier this month, and worked to get this motion on file after a period of busy travel and trial schedules for Plaintiff's counsel. There is ample time left in discovery to address the amendments, as fact discovery closes September 25.

Second, Plaintiff does not seek to add any claims or parties but rather clarifies the theories by which Wexford and Henze could be held liable pursuant to the previously alleged claims: Section 1983 (Henze and Wexford), medical malpractice (Henze), and *respondeat superior* (Wexford). In *Hunter*, the plaintiffs initially did not pursue a veil-piercing theory, but because they had already asserted claims against the individual defendants, the court later permitted them to amend those claims to include that theory once it became supported by facts uncovered in discovery. Similarly, here, Mr. Lee did not pursue a theory that Wexford would be liable based on the *nurses'* conduct at first but included a claim that *Wexford* would be liable for the malpractice of its agents. After Dr. Henze's deposition, it is clear she intends to testify that the nurses on-site who provided care to Mr. Lee at her direction committed malpractice and are to blame for Mr. Lee's injuries, so he should be permitted to adjust that claim to conform with this testimony.

The medical chart and incident reports, on which Plaintiff relied to build his theories of liability in both pleadings and discovery, reflects that Ms. Paramore notified Dr. Henze of the severity of Mr. Lee's burn throughout his case and requested guidance on his treatment. See Ex. 2 & 4, Paramore Progress Notes. The records support the allegations that Dr. Henze reacted with varying levels of indifference ("no, I will see

him tomorrow") and callousness ("not my problem"). See Ex. 5, Paramore Incident Report. Based on these records, Plaintiff had every reason to believe at the time of filing the previous complaints that the nurses properly informed Dr. Henze of their assessments. Indeed, Plaintiff continues to allege as a theory of liability that it was Dr. Henze who chose to disregard knowledge of Mr. Lee's serious medical needs. But Dr. Henze's testimony supports another theory of liability that is consistent with a claim that Plaintiff has already brought against Wexford, so Plaintiff should be able to amend his complaint accordingly.

### B. Plaintiff's amendments are not untimely or prejudicial.

Leave to amend should be granted in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). This is Plaintiff's first amendment since discovery commenced, and he has brought it with the intent of conforming his pleadings to that discovery—a legitimate motive recognized by the Seventh Circuit. *See Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023). Plaintiff notified Defendants of the intent to amend the complaint *the day after* Dr. Henze's March 31 deposition and, despite busy trial and travel schedules, has brought this motion with ample time left in discovery so that no party will be prejudiced.

Defendants have indicated that there is prejudice based on the timeliness, claiming that Plaintiff knew most of the information contained in the additional

allegations prior to April 2026. To start, Defendants cannot say that Plaintiff knew prior to Dr. Henze's deposition that she was traveling out of state or failed to order ice contrary to the standard of care. The Wexford Defendants have communicated this timeliness objection in the context of Plaintiff's amendments regarding the on-site nurses' conduct, stating that if Plaintiff believed the nurses acted inappropriately, they should have been named in the initial lawsuit or timely added to the Complaint within the statute of limitations. The only concrete piece of evidence that Defendants identify as providing such notice is Mr. Lee's December 2025 testimony that, when Dr. Henze finally personally assessed the wound, she stated, "[t]hey didn't tell me your leg was like this." Ex. 7, Lee Dep. Excerpt. Mr. Lee further testified that he responded, "You lying. The nurse was calling you." Id.

Rule 15 does not require Plaintiff to amend the complaint at the earliest possible moment he had any inkling of an additional theory. In *Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, No. 12-1099, 2014 WL 12734077 (C.D. Ill. Oct. 24, 2014), the plaintiffs filed a motion to amend about five weeks after a 30(b)(6) deposition that rendered evidence related to a defendant's advertising practices, which gave rise to amendments that included two additional counts related to that defendant. In granting the motion for leave to amend, the court recognized that "the fact that Plaintiffs may have had some awareness of a possible false advertising claim earlier is not the same as having what could be construed as evidentiary support for such a claim." *Id.*

As in *Phillippi-Hagenbuch,* Plaintiff's general knowledge that Dr. Henze

claimed ignorance regarding some symptoms or attributes of Mr. Lee's injuries is not the same as having evidence of a medical malpractice theory involving the on-site nurses. To illustrate the implausibility that this statement, standing alone, is sufficient to support such a theory, Plaintiff notes the 735 ILCS 5/2-622(a)(1) requirement that medical malpractice claims be supported by physician's report that states the basis for their determination of a meritorious medical malpractice action. If a plaintiff were to file a malpractice claim supported by a 2-622 report in which the medical expert relied solely on a lay plaintiff's recollection of a comment by the defendant physician, such a claim would face a substantial risk of dismissal and possible allegations of frivolity. On the other side of that coin, Plaintiff should not be required to amend his medical malpractice theory based on 'possible awareness' that would not, by itself, establish the requisite medical basis for such a claim. Dr. Henze's deposition testimony, by contrast, was clear about what she claims to have known, and how her claimed lack of knowledge affected her medical decision-making: "Had I known everything that's in this note, I would have sent him to the hospital." Ex. 6 at 73:17-19. Plaintiff was entitled to rely on evidence grounded in medicine—i.e. the Defendant physician's testimony—before refining the theories attendant to his malpractice *respondeat superior* claim.

There is no prejudice, either. This motion is being filed four months before the close of discovery, giving the parties ample time to conduct discovery on issues raised by the amendments. Wexford, who is represented by the same counsel as Dr. Henze, was presumably aware that Dr. Henze would blame the on-site nurses as a primary

defense, so they would be no less prepared to litigate this theory of liability than they are prepared to mount that defense. Indeed, the extent to which Plaintiff has refined his theories does not represent an unexpected shift in the litigation in light of the discovery conducted. Plaintiff has always alleged that Wexford is liable for the malpractice of its agents and employees as it relates to Mr. Lee's injuries. ECF 1 at ¶¶ 227-229. Indeed, Plaintiff's original 2-622 report, filed as an attachment to the Complaint, stated that "Wexford, by and through its agents and employees, was required to […] thoroughly assess Anthony Lee to identify his needs and risks to his health and safety" and failed to do so. ECF 1-6 at pp. 1-2. Defendants have always been on notice that, under a *respondeat superior* theory of liability, Plaintiff intended to hold Wexford responsible for the acts and omissions of its agents who were responsible for assessing him to identify his needs and risks. Now, Plaintiff seeks to clarify that these allegations include the nurses which Dr. Henze herself has blamed for Mr. Lee's injuries.

Plaintiff submits this is an opportune time to amend the complaint to conform with discovery. The parties have concluded the depositions of the Plaintiff, Defendants, and most of the witnesses who have personal knowledge of Mr. Lee's care. They are now beginning to shift their focus to the *Monell* claim, which requires discovery apart from the incident in question. Now is an ideal time for Plaintiff to update his complaint to reflect the legal theories that are consistent with substantial amount of discovery that the parties of completed on the issues of individual liability as they begin another phase of fact discovery. Plaintiff respectfully requests that this Court GRANT his

Motion for Leave to File the Third Amended Complaint.


Respectfully submitted,

/s/ Sam Harton
Attorney for the Plaintiff

Sam Harton
Paul McMahon
Daisy Ayllon
ROMANUCCI & BLANDIN, LLC
321 N. Clark St., Suite 900
Chicago, IL 60654
Tel: (312) 253-8618
Fax: (312) 458-1004
sharton@rblaw.net