**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony Lee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No: 25-cv-01772 |
| Wexford Health Sources, Inc., | ) | |
| Marlene Henze, Dianna Kucera, | ) | |
| Mitchell McGladdery, Helen Bruckner, | ) | |
| Eileen Couture, Dr. Stathis Poulakidas, | ) | |
| Presence Central and Suburban Hospitals | ) | **JURY DEMAND** |
| Network d/b/a Ascension Mercy, and | ) | |
| d/b/a AMITA Health Mercy Medical | ) | |
| Center, a/k/a AMITA Health Aurora, | ) | |
| also d/b/a Prime Healthcare Services, Inc. | ) | |
| a/k/a Prime Healthcare d/b/a Mercy | ) | |
| Medical Center, | ) | |
| | ) | |
| Defendants. | ) | |

**WEXFORD HEALTH SOURCES, INC'S PARTIAL ANSWER AND AFFIRMATIVE**
**DEFENSES TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

NOW COMES, the Defendant, WEXFORD HEALTH SOURCES, INC., (hereinafter, "Wexford"), by and through its attorneys, CONNOLLY KRAUSE, LLC, and for its Partial Answer and Affirmative Defenses to Plaintiff, ANTHONY LEE (Y48589) Third Amended Complaint (ECF 136), states as follows:

## I. JURY DEMAND

1. Plaintiff Anthony Lee hereby demands a trial by jury.

**ANSWER: Wexford also demands a trial by jury.**

## II. JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff's causes of action are brought under the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

1

**ANSWER: Wexford admits that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a). Wexford also admits that Plaintiff brings claims pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. Wexford denies that the Fourteenth Amendment applies to Plaintiff as he was not a pretrial detainee. Wexford denies liability and denies that Plaintiff has suffered damages.**

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as one or more of the Defendants resides in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

**ANSWER: Wexford admits that venue is proper. Wexford denies that any events or omissions alleged give rise to Plaintiff's claims. Wexford also denies liability.**

### III. PARTIES

4. At all times relevant, Plaintiff, Anthony Lee, ("Anthony") was a citizen of the United States, a resident of Will County, Illinois.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 4.**

5. At all times relevant, Anthony was in custody of the State of Illinois's Department of Corrections and incarcerated in the Illinois Department of Corrections.

**ANSWER: Wexford admits the allegations in paragraph 5.**

6. From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville Correctional Center ("Stateville"), a prison operated by the State of Illinois.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6.**

7.     From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville, a prison managed by the State of Illinois.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7.**

8.     From March 16, 2023, to June 23, 2023, Anthony was incarcerated at Stateville, a prison maintained by the State of Illinois.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 8.**

9.     Anthony is currently incarcerated at Joliet Treatment Center ("JTC"), a prison operated, managed, and maintained by the State of Illinois.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.**

10.    At all times relevant hereto, Wexford Health Sources, Inc. ("Wexford") was a medical care contractor that provided medical personnel and services to the State of Illinois's Department of Corrections and the inmates in its custody.

**ANSWER: Wexford admits that at certain times, and up to and before July 29, 2025, it supplied medical personnel, and those medical personnel provided medical services at certain State of Illinois Department of Correction facilities to certain individuals in custody. Wexford denies the remaining allegations in paragraph 10.**

11.    At the time of the incidents involving Anthony, Dr. Marlene Henze ("Dr. Henze") was a family medicine physician who served as the Medical Director for Stateville.

3

**ANSWER: Wexford admits that at certain times, and up to and before July 29, 2025, Dr. Marlene Henze was a family medicine physician who served as the Medical Director for Stateville Correctional Center. Wexford denies the remaining allegations in paragraph 11.**

12. At the time of the incidents involving Anthony, Dr. Henze was employed by Wexford.

**ANSWER: Wexford admits that Dr. Henze was employed by Wexford at the time alleged in the Third Amended Complaint. Wexford denies any incidents involving Anthony.**

13. At the time of the incidents involving Anthony, Dr. Henze was an agent or apparent agent of Wexford.

**ANSWER: Wexford denies the allegations in paragraph 13.**

14. Dr. Henze is currently a medical doctor at JTC.

**ANSWER: Wexford denies the allegations in paragraph 14.**

15. At all times relevant, Dr. Diana Kucera ("Dr. Kucera") was a clinical psychologist at Stateville.

**ANSWER: Wexford admits that at certain times, Dr. Diana Kucera was a clinical psychologist at Stateville Correctional Center. Wexford denies the remaining allegations in paragraph 15.**

16. At all times relevant, Dr. Kucera was employed by Wexford.

**ANSWER: Wexford denies the allegations of paragraph 16.**

17. At the time of the incidents involving Anthony, Dr. Kucera was an agent or apparent agent of Wexford.

**ANSWER: Wexford denies the allegations of paragraph 17.**

18. At all times relevant, Nurse Mitchell McGladdery ("Nurse McGladdery") was a registered nurse at Stateville.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.**

19. At all times relevant, Nurse McGladdery was employed by Wexford.

**ANSWER: Wexford denies the allegations in paragraph 19.**

20. At all times relevant, Nurse McGladdery was an agent or apparent agent of Wexford.

**ANSWER: Wexford denies the allegations in paragraph 20.**

21. At all times relevant, Nurse Practitioner Helen Bruckner ("Nurse Practitioner Bruckner") was a nurse practitioner at Stateville.

**ANSWER: Wexford admits that at certain times, Helen Bruckner was a nurse practitioner at Stateville Correctional Center. Wexford denies the remaining allegations of paragraph 21.**

22. At all times relevant, Nurse Practitioner Bruckner was employed by Wexford.

**ANSWER: Wexford admits the allegations of paragraph 22**

23. At all times relevant, Nurse Practitioner Bruckner was an agent or apparent agent of Wexford.

**ANSWER: Wexford denies the allegations of paragraph 23.**

24. At all times relevant, Dr. Eileen Couture ("Dr. Couture") was a nurse practitioner at Stateville.

**ANSWER: Wexford denies the allegations of paragraph 24.**

25. At all times relevant, Dr. Couture was employed by Wexford.

**ANSWER: Wexford admits that at certain times, Dr. Couture was a medical doctor at Stateville Correctional Center and employed by Wexford. Wexford denies the remaining allegations of paragraph 25.**

26. At all times relevant, Dr. Couture was an agent or apparent agent of Wexford.

**ANSWER: Wexford denies the allegations of paragraph 26.**

27. At all times relevant, Wexford acted as a state actor under color of law.

**ANSWER: Wexford denies the allegations of paragraph 27.**

28. At all times relevant, Dr. Henze acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Wexford admits that Dr. Henze acted within the scope of her employment. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.**

29. At all times relevant, Dr. Kucera acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29.**

30. At all times relevant, Nurse Mitchell acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30.**

31. At all times relevant, Nurse Practitioner Bruckner acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Wexford admits that Nurse Practitioner Bruckner acted within the scope of her employment. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph**

32.     At all times relevant, Eileen Couture acted as a state actor under color of law and within the scope of their employment.

**ANSWER: Wexford admits that Eileen Couture acted within the scope of her employment. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph**

33.     At all times relevant, Marlene Henze was the facility medical director for Joliet Treatment Center and Stateville Correctional Center.

**ANSWER: Wexford admits that at certain times, Dr. Henze was the medical director for Joliet Treatment Center and Stateville Correctional Center. Wexford denies the remaining allegations of paragraph 33.**

34.     At all times relevant, Dr. Stathis Poulakidas was employed by Presence Central and Suburban Hospitals Network d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 34.**

35.     Presence Central and Suburban Hospitals Network is an Illinois not-for-profit corporation that has also done business as Ascension Mercy, Health Mercy Medical Center, AMITA Health Aurora. Reference to each and any of these entities, including AMITA Health Aurora, should be construed to include reference to the parent entity of Presence Central and Suburban Hospitals Network.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35.**

36. Mr. Lee received treatment from Dr. Stathis Poulakidas at AMITA Health Aurora, a full-service hospital and medical center providing emergency, medical, laboratory, imaging, and surgical car and all associated care to the general public, including Mr. Lee.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36.**

37. At all times relevant, Dr. Stathis Poulakidas acted as an agent or apparent agent and employee of Presence Central and Suburban Hospitals Network d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.**

38. At all times relevant, Dr. Stathis Poulakidas acted within the scope of his employment at Presence Central and Suburban Hospitals Network d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 38.**

39. At all times relevant, Nurse Priscilla Paramore ("Nurse Paramore") was a registered nurse working at Joliet Treatment Center.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39.**

40. At all times relevant, Nurse Paramore was an agent or apparent agent of Wexford.

**ANSWER: Wexford denies the allegations of paragraph 40.**

8

41. At all times relevant, Nurse Ann Ohakasim ("Nurse Ohakosim") was a registered nurse working at Joliet Treatment Center.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 41.**

42. At all times relevant, Nurse Ohakosim was an agent or apparent agent of Wexford.

**ANSWER: Wexford denies the allegations of paragraph 42.**

43. At all times relevant, Nurses Paramore and Ohakosim were contracted through Wexford to work as nurses at Joliet Treatment Center.

**ANSWER: Wexford denies the allegations of paragraph 43.**

### IV. FACTUAL ALLEGATIONS

44. On February 25, 2023, Anthony set himself on fire in an act of self-harm.

**ANSWER: Wexford admits that on February 25, 2023, Plaintiff intentionally set himself on fire. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 44.**

45. As a result of his self-immolation on February 25, 2023, Anthony suffered third-degree, circumferential burns to his leg.

**ANSWER: Wexford admits that Plaintiff's self-immolation caused burns to his leg. Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45 as to third degree and circumferential burns.**

46. After Anthony set himself on fire, a Wexford nurse notified Dr. Henze and Dr. Kucera of the incident.

**ANSWER: Wexford admits that after Plaintiff intentionally set himself on fire, a nurse notified Dr. Henze. Wexford denies that this nurse was a Wexford nurse. Wexford lacks**

9

knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 46.

47. Dr. Henze and Kucera both relied on assessment of Anthony's wounds by conversation with Nurse Paramore and Nurse Ohakosim on February 25, 2023.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 47.**

48. At the time that Nurse Paramore and Nurse Ohakosim assessed Anthony's wounds on February 25, 2023, Anthony's burns were yellow in color and had blisters that were "bursting during reassessment of restraints." This assessment was conveyed to Dr. Henze shortly after the occurrence via telephone.

**ANSWER: Wexford admits the allegations in paragraph 48.**

49. Dr. Henze did not personally assess Mr. Lee at the time of the injury because she was in St. Louis, Missouri.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 49.**

50. Dr. Henze was the physician on call for Joliet Treatment Center on February 25 and 26, 2023.

**ANSWER: Wexford admits that at certain times, Dr. Henze was the physician on call for the Joliet Treatment Center. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 50.**

51. There were no physicians on site at JTC on the weekends, including February 25 and 26, 2023.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 51.**

52. The only medical doctor to which people incarcerated at JTC had access on the weekends, including February 25 and 26, 2023, was the on-call physician.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 52.**

53. The on-call physician could ask another physician to cover for them if they were going out of town or would otherwise be unavailable but were not required to do so.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 53.**

54. Wexford maintained an official policy in which there were no restrictions on the conduct of on-call physicians.

**ANSWER: Wexford denies the allegations of paragraph 54.**

55. Wexford maintained an official policy in which on-call physicians would be unavailable to personally examine patients in the event of an emergency.

**ANSWER:  Wexford denies the allegations of paragraph 55.**

56. As a result of this policy, Dr. Henze was permitted to travel to St. Louis while she was the on-call physician for JTC, depriving JTC inmates access to necessary medical care.

**ANSWER: Wexford denies the allegations of paragraph 56.**

57. In response to Anthony's burns on February 25, 2023, Dr. Henze ordered Silvadene and directed, Nurse Paramore and Nurse Ohakosim to wrap the wound in soft, dry gauze dressing.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 57.**

11

58. Dr. Henze prescribed Tylenol to Anthony.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 58.**

59. Dr Henze did not initially order ice to be used to prevent further burning within the lower extremity, nor to elevate the leg to reduce swelling, but did order both of those in the evening of February 26, 2023.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 59**

60. Dr. Henze did not prescribe any other medications to treat the pain associated with Anthony's burns.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 60.**

61. Dr. Henze ordered Anthony to be placed in four-point restraints in response to his act of setting himself on fire.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 61.**

62. Dr. Kucera ordered Anthony to be placed in four-point restraints in response to his act of setting himself on fire.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 62.**

63. Anthony complained about the four-point restraints to Nurse Paramore and Nurse Ohakosim because they were extremely painful due to his burn injuries.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 63.**

64.     The Wexford nurses, Nurse Paramore and Nurse Ohakosim, called Dr. Kucera multiple times to request that she be permitted to remove Anthony's restraints.

**ANSWER: Wexford denies that Nurse Paramore and/or Nurse Ohakosim were Wexford nurses. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 64.**

65.     The Wexford nurses, Nurse Paramore and Nurse Ohakosim, also called Dr. Henze and Dr. Kucera multiple times on February 25 and February 26 to request that they be permitted to remove Anthony's restraints on his burned lower extremity. Dr. Kucera advised the Wexford nurses, Nurse Paramore and Nurse Ohakosim, that Anthony must remain in four-point restraints.

**ANSWER: Wexford denies that Nurse Paramore and/or Nurse Ohakosim were Wexford nurses. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 65**

66.     Dr. Henze also advised the Wexford nurses, Nurse Paramore and Nurse Ohakosim, that Anthony must remain in four- point restraints.

**ANSWER: Wexford denies that Nurse Paramore and/or Ohakosim were Wexford nurses. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 66**

67.     Illinois Department of Corrections policy 04.04.103 (hereinafter referred to as "the Restraint Policy") provides several restrictions on the use of restraints for mental health purposes, including the following:

> a.     Restraints for mental health purposes shall be applied under medical supervision and shall only be used when other, less restrictive measures

13

have been found to be ineffective and to ensure the immediate physical safety of the individual in custody, staff member or others;

b.      Restraints shall not be used as a disciplinary measure;

c.      Restraint implementation shall be applied by order of a psychiatrist, or if a psychiatrist is not available, a physician, physician's assistant, nurse practitioner or a licensed clinical psychologist;"

d.      The initial order for use of restraints shall not exceed four hours. Should subsequent orders become necessary, the time limit may be extended, but no subsequent order for restraint extension shall be valid for more than 16 hours beyond the termination of the initial order. If further restraint is required beyond the initial order and one extension, a new order shall be issued pursuant to the requirements provided herein and the Regional Mental Health Administrator shall be notified; and

e.      Restraints shall be applied in a bed located in a crisis care area, or similar Setting that is in view of staff. Immediately following the placement of an individual in custody in restraints for mental health purposes, medical staff shall conduct an examination of the individual in custody to ensure that: a) No injuries exist; b) Restraint equipment is not applied in a manner likely to result in injury; and c) There is no medical contraindication to maintaining the individual in custody in restraints.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 67, including subparagraphs (a) through (e) in paragraph 67.**

68.     Wexford staff are required to follow the policies of the Illinois Department of Corrections, including the Restraint Policy.

**ANSWER: Wexford admits that the Illinois Department of Corrections maintained certain policies. Wexford denies the remaining allegations of paragraph 68.**

69.     Dr. Henze and Dr. Kucera authorized the use of restraints on Anthony despite his serious injury and the medical contraindication that restraints would further aggravate the burn and/or compromise circulation in a limb where the limb was severely injured and the circulation

was already severely compromised. Further, no subsequent order after the initial four hour order was given until at least 15 hours later, in violation of Wexford and IDOC policy.

**ANSWER: Wexford denies that Dr. Henze violated any Wexford or IDOC policy. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 69.**

70. At all times relevant, Dr. Kucera had no training in the treatment of burn wounds.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 70.**

71. At all times relevant, Dr. Kucera did not have any qualifications to direct the medical care of physical injury.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 71.**

72. At all times relevant, Dr. Kucera was a clinical psychologist, not a medical doctor.

**ANSWER: Wexford admits the allegations of paragraph 72.**

73. On February 25, 2023, Anthony exhibited the following symptoms:

a. There were burn blisters on Anthony's lower right leg;

b. Anthony was complaining of pain;

c. Anthony's right foot was swollen;

d. Anthony had no sensation in his right leg;

e. Anthony's right shin was warm to the touch;

f. Anthony's right leg has palpable pulses;

g. There were blisters on Anthony's right shin;

h. Anthony's right leg was red, brown, and white in certain areas.

15

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 73, including subparagraphs (a) through (h) of paragraph 73.**

74. Dr. Kucera and Dr. Henze were aware of the condition of Anthony's leg on February 26, 2023 because of the communications from Nurse Paramore and Nurse Ohakosim.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 74.**

75. Anthony's symptoms on February 26, 2023, were indicative of compartment syndrome and a worsening burn injury.

**ANSWER: Wexford denies the allegations of paragraph 75.**

76. A circumferential burn on an extremity, such as that which occurred to Anthony Lee on February 25, 2023, is known to lead to compartment syndrome, which is a surgical emergency.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 76.**

77. Upon learning of Anthony's condition on February 25, 2023, Dr. Henze and Dr. Kucera ordered that Anthony be kept in four-point restraints.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 77.**

78. Upon learning of Anthony's condition on February 25, 2023, Dr. Henze and Dr. Kucera failed to:

　　a. Allow Anthony movement outside of his restraint;

　　b. Order necessary therapeutic treatment for his symptoms;

c. Develop or implement the necessary treatment plan to direct the treatment of Anthony's wounds;

d. Make any efforts to emergently refer Anthony to a hospital;

e. Make any efforts to emergently refer Anthony to a burn specialist;

f. Ensure that Anthony's circulation or vascular status was monitored;

g. Order Anthony's release from four-point restraints or at a minimum, removing the restraint on the burned area;

h. Make any effort to collaborate with other medical providers regarding Anthony's care;

i. Repeatedly assess the need for restraints;

j. Take any other reasonable steps to treat Anthony's wound.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 78, including subparagraphs (a) – (j) of paragraph 78.**

79. Burn injuries tend to evolve and change such that close attention to their development is required to manage them.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 79.**

80. Dr. Henze and Dr. Kucera knew that neither of them had qualifications or training in the treatment of serious burns yet directed the treatment and care of Anthony's wounds.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 80.**

81. Anthony's burn compromised blood flow to his leg.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 81.**

17

82. Dr. Henze and Dr. Kucera knew that Anthony's burn could compromise blood flow to his leg.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 82.**

83. Dr. Henze and Dr. Kucera knew that the blood flow to Anthony's leg could be further compromised by keeping him in restraints.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 83.**

84. Dr. Henze and Dr. Kucera knew that Anthony's wounds could significantly worsen if not treated appropriately.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 84.**

85. Dr. Henze and Dr. Kucera's management of Anthony's burns, wounds, and restraints collectively and individually breached the standard of care of reasonably well-qualified physicians within their area of expertise.

**ANSWER: Wexford denies that Dr. Henze's management of Plaintiff's burns, wounds, and/or restraints collectively and/or individually breached the standard of care of reasonably well-qualified physicians within her area of expertise. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 85.**

86. On February 27, 2023, Stateville Lieutenants Cruz and Powell released Anthony from four-point restraints without permission from Dr. Henze or Dr. Kucera because they

18

recognized that the four-point restraints were cruel and unusual given Anthony's medical condition.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 86.**

87. On February 27, 2023, Dr. Henze finally referred Anthony to the hospital at Amita Health Aurora, but failed to do so emergently.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 87.**

88. By the time Anthony arrived at the hospital, he no longer had a pulse in his right leg.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 88.**

89. By the time Anthony arrived at the hospital, his treaters believed there was a high probability of imminent-life-threatening deterioration that could result in multi-organ failure and/or the need for limb amputations.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 89.**

90. Soon after Anthony arrived at the hospital, he received an escharotomy, a surgical procedure that involves cutting through burned skin to relieve pressure and improve circulation.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 90.**

91. Anthony's treating providers noted that Anthony's presentation to the hospital was delayed.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 91.**

92.     Anthony's treaters at the hospital noted that "he has a high likelihood of loss of limb given the extent of injury and delay in presentation."

**ANSWER: Wexford denies that a delay in presentation caused or contributed to Plaintiff's loss of limb. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 92.**

93.     On March 1, 2023, Anthony received a skin graft on his right leg.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 93.**

> **A. Upon returning to Department of Corrections custody, Anthony developed an infection.**

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in this Heading.**

94.     Anthony was discharged from the hospital on March 16, 2023, at which time his skin graft and wounds were in good condition.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 94.**

95.     In the afternoon of March 16, 2023, Anthony was transferred back to Stateville for care of his right leg burn and skin graft.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 95.**

96.     On March 16, 2023, Anthony arrived at Stateville with his skin graft intact and without signs of infection.

20

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 96.**

97.     Upon returning to Stateville, Anthony required appropriate wound care treatment, including dressing changes and antibiotic ointments, to prevent the development of any infections.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 97.**

98.     On March 23, 2023, Anthony's wound began to show signs of infection, including slough and a foul odor.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 98.**

99.     On March 24, 2023, Wexford staff believed that Anthony's skin graft was infected.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 99.**

100.     On March 24, 2023, Anthony's wound was, in fact, infected.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 100.**

101.     In response to the infection, Wexford Nurse Practitioner Brianna Orr prescribed one tablet of Augmentin 875/125 by mouth once per day.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 101.**

102.     No other treatments or medications were given to Anthony in response to the infection.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 102.**

103. Wexford practitioners did not order a wound culture or refer Anthony to the hospital or specialist upon learning of his infection.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 103.**

104. More than a week after Wexford staff learned of the infection, Anthony was transported to Amita Health Aurora and seen by Dr. Shabirhusain Abadin, MD, at AMITA Medical Group.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 104.**

105. Dr. Abadin removed Anthony's dressing and observed that Anthony's wound site was infected and not fully healing.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 105.**

106. Dr. Abadin recommended that Anthony continue receiving antibiotics and scheduled him to return to AMITA Health Aurora for a three-month follow-up.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 106.**

107. Anthony's 10-day Augmentin prescription elapsed on the same day that he saw Dr. Abadin.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 107.**

22

108. At the time his Augmentin prescription elapsed, Anthony's wound was still infected.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 108.**

109. Contrary to Dr. Abadin's instruction, Anthony's Augmentin prescription was not re-ordered.

**ANSWER: Wexford denies the allegations of paragraph 109.**

> **B. Wexford provided inadequate care and treatment of Anthony's infection, which had so severely deteriorated throughout the month of April 2023 to the point where the bone was exposed.**

**ANSWER: Wexford denies that as a corporation, it provided any care or treatment to Plaintiff. Wexford denies that any Wexford employee or agent failed to provide adequate care and treatment for Plaintiff's self-inflicted wounds. Wexford denies the remaining allegations of this Heading.**

110. Upon returning to Stateville from his appointment with Dr. Abadin on April 3, 2023, Anthony did not receive any antibiotics until April 29, 2023.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 110.**

111. Throughout the month of April 2023, Anthony's wound continued to worsen.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 111.**

112. Nurse McGladdery, Nurse Practitioner Bruckner, and Dr. Couture were responsible for Anthony's wound care and treatment.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 112.**

113.     Nurse McGladdery was responsible for evaluating Anthony's wound nearly every day between April 3, 2023, and May 5, 2023.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 113.**

114.     Nurse Practitioner Bruckner was responsible for evaluating Anthony's wound multiple times a week between April 3, 2023, and May 5, 2023.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 114.**

115.     Dr. Couture was responsible for evaluating Anthony's wound on a weekly basis between April 3, 2023, and May 5, 2023.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 115.**

116.     Prior to their treatment of Anthony Lee, Nurse McGladdery and Nurse Practitioner Bruckner had never cared for or treated a burn or graft site wound.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 116.**

117.     Nurse McGladdery, along with other Wexford practitioners, falsely noted that there were no signs of infection at Anthony's wound, even though they knew that the infection was worsening.

**ANSWER: Wexford denies that Nurse McGladdery was an employee or agent of Wexford. Wexford denies the remaining allegations of paragraph 117.**

24

118.    By April 12, 2023, every Wexford medical provider responsible for Anthony's care knew that Anthony's graft had failed, his wound was severely infected and rapidly worsening, and that he needed to go to a hospital and/or burn specialist.

**ANSWER: Wexford denies the allegations of paragraph 118.**

119.    Throughout the course of Anthony's care, Anthony repeatedly asked Wexford staff for pain medication due to the excruciating pain at his wound site.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 119.**

120.    Throughout the course of Anthony's care, Nurse McGladdery repeatedly assured other medical providers that his wound was healing, even though he knew it was rapidly deteriorating.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 120.**

121.    Prior to April 27, 2023, Nurse McGladdery, Nurse Practitioner Bruckner, Eileen Couture, and other Wexford staff became aware that Anthony's wound had deteriorated so severely that his bone was exposed and visible yet did not take reasonable and necessary steps to facilitate a referral to a hospital or specialist or otherwise adequately treat his infection.

**ANSWER: Wexford denies that Nurse McGladdery was an employee or agent of Wexford. Wexford denies the remaining allegations of paragraph 121.**

122.    On April 29, 2023, Anthony received a wound culture test and an Augmentin prescription.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 122.**

25

123.   The results of the wound culture reflected that Anthony's wound was infected with three strains of bacteria, one of which is intrinsically resistant to Augmentin and two of which are likely resistant to Augmentin.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 123.**

124.   After receiving the wound culture results, Nurse Practitioner Bruckner ordered Anthony to be placed on Gentamicin, an antibiotic.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 124.**

125.   After consulting with Medical Director Henze, Nurse Practitioner Bruckner changed Anthony's medication regimen to Zosyn and Bactrim.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 125.**

126. Nurse Practitioner Bruckner also prescribed and administered non-steroidal anti-inflammatory injections between May 1, 2023, and May 5, 2023.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 126.**

127.   Dr. Couture told Anthony that he should just take the antibiotics and "hold off" on the hospital because Wexford denied his authorization.

**ANSWER: Wexford denies that allegations of paragraph 127.**

128.   Throughout the month of April and the first week of May, Defendants continued to administer treatment that they knew was ineffective instead of facilitating a referral to a hospital or specialist.

**ANSWER: Wexford denies the allegations of paragraph 128.**

129.     Between April 4, 2023, and May 5, 2023, Nurse McGladdery repeatedly assured Anthony that his wound was healing, even though he knew it was rapidly deteriorating.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 129.**

130.     Nurse McGladdery admitted to Anthony that he and the other members of his care team knew his bone was showing well before they referred him to another provider. Nurse McGladdery admitted that the staff was trying to handle the issue themselves despite knowing Anthony's condition was worsening.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 130.**

> **C.     When Anthony is referred to the hospital, Dr. Poulakidas performed an unnecessary above-the-knee amputation.**

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in Heading (C).**

131.     Anthony was finally transported to Amita Health Aurora on May 5, 2023. This was the first time he was sent to the hospital, a specialist, or outside provider in over a month.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 131.**

132.     Anthony was evaluated by Dr. Stathis Poulakidas at Amita Health Aurora, who determined that Anthony had a rejected graft, a wound on his lower right leg that had been "worsening," and exposed tibia bone.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 132.**

133. When Anthony was evaluated by Dr. Poulkidas, Anthony's bone was infected.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 133.**

134. Depending on the severity, a bone infection can be treated by surgery or other methods such as antibiotics.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 134.**

135. Many bone infections can be successfully treated without surgery, especially when they occur in individuals who are in their 20s, such as Anthony.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 135.**

136. Dr. Poulakidas did not conduct a reasonable investigation into the condition of Anthony's leg, did not consult with a physician who specialized in plastic surgery, and did not order any imaging of Anthony's leg.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 136.**

137. Dr. Poulakidas decided that Anthony's leg would likely need to be amputated by looking at pictures taken on his colleague's phone, prior to ever physically evaluating Anthony's leg himself.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 137.**

28

138. Dr. Poulakidas also relied on these cell phone pictures to determine that Anthony's infection was likely due to his own manipulation of the wound, but there was no evidence that Anthony had interfered with his wound. In fact, Anthony had not interfered with his wound.

**ANSWER: Wexford denies that Anthony did not interfere with his wound. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 138.**

139. When Dr. Poulakidas evaluated Anthony's bone, it demonstrated ulceration, which is contrary to the conclusion that the bone was entirely unsalvageable.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 139.**

140. Dr. Poulakidas advised Anthony that he would require an above-the knee amputation and did not attempt to treat Anthony with alternative treatments before deciding to amputate his leg.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 140.**

141. There were other treatment options available to Dr. Poulakidas that could have prevented Anthony from losing his leg, but Dr. Poulakidas did not employ any of those treatment options. Anthony was a candidate for more conservative treatments that did not require the amputation of a limb.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 141.**

142. On May 6, 2023, Dr. Poulakidas amputated Anthony's leg above the knee.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 142.**

143. Anthony's leg was more likely than not salvageable at the time Dr. Poulakidas decided to amputate it.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 143.**

144. Anthony did not self-harm between the time that he received his skin graft and the time of his amputation.

**ANSWER: Wexford denies the allegations in paragraph 144.**

145. Anthony was compliant with his medication regimen between March 16, 2023, and the time of his amputation.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 145.**

**COUNT I: 42 U.S.C. 1983**
**Against Defendant Wexford Health Sources, Inc.**

146. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if fully stated herein.**

147. At all relevant times, Plaintiff was incarcerated in the care, custody, and control of the State of Illinois.

**ANSWER: Wexford admits the allegations of paragraph 147.**

148. At all relevant times, the State of Illinois had contracted Wexford to provide comprehensive medical services to inmates in the care, custody, and control of the State of Illinois's Department of Corrections (IDOC).

30

**ANSWER: Wexford admits that at certain times, up to and until July 29, 2025, it had a contract with the State of Illinois to supply medical providers that then provided medical treatment to certain inmates in the care, custody, and control of the Illinois Department of Corrections. Wexford denies the remaining allegations of paragraph 148.**

149. At all relevant times, Dr. Marlene Henze, Dr. Dianna Kucera, Nurse McGladdery, Nurse Practitioner Bruckner, and Eileen Couture were employed by and agents of Wexford and, pursuant to Wexford's contract with the State of Illinois, were acting under color of state law.

**ANSWER: Wexford admits that at certain times, Dr. Marlene Henze, Dr. Eileen Couture, and Nurse Practitioner Helen Bruckner were employed by Wexford. Wexford denies the remaining allegations of paragraph 149.**

150. At all times relevant, Nurse Paramore and Nurse Ohakosim were agents of Wexford and, pursuant to Wexford's contract with the State of Illinois, were acting under color of state law.

**ANSWER: Wexford denies the allegations of paragraph 150.**

151. At all times relevant, Anthony was suffering from a serious medical condition.

**ANSWER: Wexford denies the allegations of paragraph 151.**

152. Anthony was deprived federal constitutional rights that is properly attributable to Wexford.

**ANSWER: Wexford denies the allegations of paragraph 152.**

153. Wexford employs general and/or family medicine providers, but does not employ specialists or surgeons, so Wexford must refer incarcerated patients to an external provider—such as a hospital-in order to provide specialty care.

**ANSWER: Wexford admits that it employs general and/or family medicine providers. Wexford denies the remaining allegations of paragraph 153.**

31

154. According to their contract with the State, Wexford's compensation by the State is reduced "by an amount equal to what the State pays out for Hospital Service once Billed Charges exceed the Annual Hospital Utilization Threshold."

**ANSWER: Wexford denies the allegations of paragraph 154.**

155. Wexford's contract with the State requires Wexford to pay the costs associated with referrals to external providers, such as a specialty care site or hospitals, once they exceed a particular threshold, thus economically incentivizing Wexford to keep as much medical care on State property as possible.

**ANSWER: Wexford denies the allegations of paragraph 155.**

156. As a result of a class action lawsuit, *Lippert v. Jeffreys,* the State has been subject to a Consent Decree since May 9, 2019, regarding the provision of medical services by IDOC and Wexford.

**ANSWER: Wexford denies that the Consent Decree entered in *Lippert v. Jeffreys* applies to Wexford. Wexford denies the remaining allegations of paragraph 156.**

157. The *Lippert v. Jeffreys* action resulted in the periodic evaluation of IDOC and Wexford policies, practices, and customs as they pertain to medical care by an independent monitor.

**ANSWER: Wexford denies that its policies, practices, and customs are periodically evaluated as a result of *Lippert v. Jeffreys*. Wexford lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 157.**

158. The Fifth Annual Report of the independent Lippert monitor was filed on August 9, 2022, and found the following:

a.  IDOC had failed to address the eight recommendations made by the independent monitor in the preceding report regarding specialty care referrals.

b.  "[D]elays and lack of coordination of care with specialists that resulted in significant morbidity and mortality."

c.  "The lack of coordination of specialty care has been a problem for the duration of the Consent Decree and has been documented in multiple record reviews including in the mortality reviews in the appendix.

d.  IDOC has not provided any information that these problems have been corrected or that they have been addressed in any way."

e.  "The judgment of physicians with respect to sending patients for specialty referral and hospitalization is still not working to provide a safe and effective health program as evidenced in the Monitor's mortality reviews."

f.  "Hospital physicians often provide recommendations but providers at IDOC prisons frequently fail to review these recommendations and modify the therapeutic plan based on the recommendations."

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 158, including subparagraphs (a) through (f) of paragraph 158.**

159.  The first four Annual Reports of the independent *Lippert* monitor cited similar deficiencies in the provision of medical care at IDOC facilities.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 159.**

160.  All *Lippert* monitor reports provided notice to IDOC and Wexford of their unconstitutional policies, practices, and procedures.

**ANSWER: Wexford denies that all *Lippert* monitor reports provided Wexford notice. Wexford denies that is has unconstitutional policies, practices, and procedures. Wexford denies the remaining allegations in paragraph 160.**

161. The Seventh Annual Report of the independent Lippert monitor was released on December 27, 2023, and found the following:

g. IDOC had not initiated an analysis of their specialty care in order to improve specialty care services;

h. One of the most substantial areas for opportunities for improvement identified in reviews of patients who dies in IDOC custody was specialty care;

i. "There were multiple [opportunities for improvement] related to physician oversight, physician availability, and failure to recognize or address significant signs and symptoms."

j. "The two major barriers holding back IDOC's progress toward compliance with the Consent Decree and the resulting safe, effective, and respectful health care delivery system are staffing and the physical plant deficiencies."

k. Approximately half the positions Wexford was responsible for providing were unfilled.

l. "The state needs to radically change the recruitment and hiring process and expect the same from the contract vendor."

m. "Access to specialty care, including diagnostic testing is still poor. Timeliness of specialty referral and follow up remains problematic and constituted one of the most frequent deficiencies identified in mortality reviews."

n. "The absence of physician oversight and insufficient support staff contribute to delays and poor communication about patient treatment."

o. "Reimbursement rates for specialty care providers appears to be a significant problem statewide and the state of Illinois needs to reexamine if the current method of reimbursement for offsite care is a barrier to access."

p. One third of physician positions were vacant.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 161, including subparagraphs (g) through (p) of paragraph 161.**

162. All of these failures by IDOC that are referenced in the *Lippert* reports are substantially caused by the acts and omissions of Wexford.

**ANSWER: Wexford denies the allegations of paragraph 162.**

163. As of December 27, 2023, 107 deaths in IDOC were reviewed by a mortality review group led by Southern Illinois University (SIU).

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 163.**

164. Of the 107 deaths the SIU mortality review team provided to the independent monitor, they found 899 "opportunities for improvement."

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 164.**

165. Nearly one fifth of the "opportunities for improvement" found by the SIU mortality review team related to specialty and hospital care, including failure to refer to specialty care or a hospital.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 165.**

166. Nearly one third of the "opportunities for improvement" found by the SIU involved physician practice issues, including failure to timely refer to specialty care or hospital, failure to monitor or manage chronic illness or not managing consistent with standards of care, failure to order timely labs or tests, physician availability, failure to monitor medication management.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 166.**

167. Management and treatment of a skin graft requires specialty care.

35

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 167.**

168. Management and treatment of a skin graft that shows signs of infection require specialty care.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 168.**

169. Treatment of a skin graft that is failing or has failed requires specialty care.

**ANSWER: Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 169.**

170. Wexford providers were trained that inmates tend to lie about their symptoms in order to get permission to leave the prison facility, so providers should be skeptical of inmate's medical needs.

**ANSWER: Wexford denies he allegations of paragraph 170.**

171. This training influenced how Wexford doctors assessed their patients and decided whether to provide outside referrals.

**ANSWER: Wexford denies the allegations of paragraph 171.**

172. At all times relevant, Wexford implemented the following unconstitutional widespread practices and customs:

> a. Medical providers delay incarcerated patients' access to adequate medical care, including evaluation by specialists;
>
> b. Medical providers are discouraged, inhibited, disincentivized, and/or prevented from referring inmates to outside hospitals or specialists;
>
> c. Medical providers attempt to treat medical conditions beyond their expertise in lieu of referring that incarcerated patient to the appropriate specialist;

d. Medical providers referring incarcerated patients to external providers, such as a specialty care site or hospital, only as a last resort, even when the needs of an incarcerated patient clearly exceed that which can be provided within an IDOC facility;

e. Follow-up appointments are routinely not scheduled or, when they are scheduled, do not occur;

f. When an inmate is sent to an outside provider, Wexford medical providers fail to follow their orders and recommendations;

g. Medical providers do not properly assess inmates' needs for medical care.

h. Medical providers do not properly engage with inmates to determine their medical needs;

i. IDOC facilities are routinely understaffed in the medical provider roles that Wexford is responsible for filling; and,

j. Medical providers assume that patients are lying about their symptoms.

**ANSWER: Wexford denies each and every allegation of paragraph 172, including denying all allegations in subparagraphs (a) through (j) in paragraph 172.**

173. Wexford's routine failure to timely refer patients to specialty care, facilitate referrals and follow-up appointments, provide necessary specialized care in their infirmary settings, and follow the orders of outside specialists have resulted in delayed treatment, poor outcomes, and unnecessary deaths, including the following:

a. When a hospital recommended that an inmate, who had been hospitalized three times with heart failure, be seen by a cardiologist, Wexford did not refer him. The inmate was kept in the prison infirmary for nine days, where he developed pneumonia, went into shock, and fell and broke three ribs. On the ninth day, he was hospitalized, but he died two days later;

b. A patient who needed immediate hospitalization for transfusion and diagnostic evaluation due to a life-threatening hemoglobin level was prescribed iron therapy and repeat blood county by a Wexford provider and was not followed up with for an entire year. After he finally was hospitalized and referred to oncology, his plan for surgery and oncologist recommendations were not followed by the prison facility. His condition deteriorated, and he should have been admitted to a specialized nursing unit

instead of the prison infirmary. He ultimately died in prison with very little physician oversight in the last few days of his life;

c. A patient who had a cardioversion was recommended to return to his specialty provider in one month, but the referral was never made; and

d. A patient had a cardiology appointment with an outside provider, but the consult was not reviewed by any Wexford provider for fifteen days, and the Wexford provider never followed up with the patient.

**ANSWER: Wexford denies each and every allegation of paragraph 173, including denying all allegations in subparagraphs (a) through (d) in paragraph 173.**

174. Wexford also maintained an official policy in which no conduct restrictions were placed on on-call physicians, and in which on-call physicians would be unavailable to personally examine patients in the event of an emergency.

**ANSWER: Wexford denies the allegations of paragraph 174.**

175. Pursuant to Wexford's on-call policy, on-call physicians were permitted to travel across state lines while remaining responsible for the medical care of inmates at IDOC facilities.

**ANSWER: Wexford denies the allegations of paragraph 175.**

176. As a result of Wexford's on-call policy, Dr. Henze was permitted to travel to St. Louis while she was the on-call physician available to JTC inmates.

**ANSWER: Wexford denies the allegations of paragraph 176.**

177. As a result of Wexford's on-call policy, no physician was available to assess Mr. Lee's injury on February 25 or 26, 2023.

**ANSWER: Wexford denies the allegations of paragraph 177.**

178. As a result of these policies, procedures, and customs, Anthony Lee suffered painful injuries for which he was not timely referred to the appropriate specialist and ultimately lost a limb.

**ANSWER: Wexford denies the allegations of paragraph 178.**

WHEREFORE, Plaintiff, Anthony Lee, demands judgment against Defendant Wexford Health Sources, Inc. for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies that Plaintiff is entitled to judgment in his favor against Defendant Wexford. Wexford denies that Plaintiff is entitled to damages. Wexford denies that Plaintiff is entitled to disbursements, attorney fees and costs and interest. Wexford denies that Plaintiff is entitled to other and further relief. Wexford denies the remaining allegations of this paragraph.**

**COUNT II: 42 U.S.C. 1983**
**Against Defendant Dr. Marlene Henze**

179.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers in each paragraph of this complaint as if fully stated herein.**

180.    Dr. Henze, in addition to being one of Anthony's treating providers at Joliet Treatment Center, was also, at all relevant times, the Facility Medical Director at Stateville Correctional Center and Joliet Treatment Center.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 180.**

181.    As Facility Medical Director, Dr. Henze had the authority to refer an inmate in Stateville Correctional Center and Joliet Treatment Center to an outside hospital.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge**

39

**or information sufficient to form a belief about the truth of the allegations in paragraph 181.**

182. At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 182**

183. Dr. Henze knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 183.**

184. Dr. Henze was deliberately indifferent to Anthony's serious medical need.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 184.**

185. Dr. Henze recklessly disregarded Anthony's serious medical needs.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 185.**

186. Dr. Henze intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 186.**

187. Dr. Henze withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 187.**

188. Dr. Henze's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 188.**

189. No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Dr. Henze did.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 189.**

190. Dr. Henze failed to conform to basic standards of medical care.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 190.**

191. Dr. Henze's "treatment decisions" were a substantial departure from accepted professional judgment, practice and standards, demonstrating that she did not rely on such judgment.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 191.**

192. Dr. Henze persisted in a course of treatment known to be ineffective.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 192.**

193. Dr. Henze chose easier and less efficacious treatments without exercising sound and reasonable professional judgment.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 193.**

194. Dr. Henze's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 194.**

195. Dr. Henze's deliberate indifference directly and proximately caused Anthony's injuries.

**ANSWER: The allegations of Count II are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 195.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant Marlene Henze for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations in this paragraph..**

### COUNT III: 42 U.S.C. 1983
### Against Defendant Dr. Dianna Kucera

196.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint as if fully stated herein.**

197.    At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations of paragraph 197.**

198.    Dr. Kucera knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 198.**

199.    Dr. Kucera was deliberately indifferent to Anthony's serious medical need.

43

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 199.**

200.    Dr. Kucera recklessly disregarded Anthony's serious medical needs.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 200.**

201.    Dr. Kucera intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 201.**

202.    Dr. Kucera withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 202.**

203.    Dr. Kucera's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 203.**

204. No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Dr. Henze did.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 204.**

205. Dr. Kucera failed to conform to basic standards of medical care.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 205.**

206. Dr. Kucera's "treatment decisions" were a substantial departure from accepted professional judgment, practice and standards, demonstrating that she did not rely on such judgment.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 206.**

207. Dr. Kucera persisted in a course of treatment known to be ineffective.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 207.**

208. Dr. Kucera chose easier and less efficacious treatments without exercising sound or reasonable professional judgment.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 208.**

209. Dr. Kucera's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 209.**

210. Dr. Kucera's deliberate indifference directly and proximately caused Anthony's injuries.

**ANSWER: The allegations of Count III are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 210.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant Dianna Kucera for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

### COUNT IV: 42 U.S.C. 1983
### Against Defendant Nurse Mitchell McGladdery

211. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint as if fully stated herein.**

212. At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 212.**

213. McGladdery knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 213.**

214. McGladdery was deliberately indifferent to Anthony's serious medical need.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge**

47

or information sufficient to form a belief about the truth of the allegations in paragraph 214.

215. McGladdery recklessly disregarded Anthony's serious medical needs.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 215.**

216. McGladdery intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 216.**

217. McGladdery withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 217.**

218. McGladdery's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge**

or information sufficient to form a belief about the truth of the allegations in paragraph 218.

219. No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Dr. Henze did.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 219.**

220. McGladdery failed to conform to basic standards of medical care.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 220.**

221. McGladdery's "treatment decisions" were a substantial departure from accepted professional judgment, practice, and standards.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 221.**

222. McGladdery persisted in a course of treatment known to be ineffective.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 222.**

223. McGladdery chose easier and less efficacious treatments without exercising sound professional judgment.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 223.**

224. McGladdery's conducted contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 224.**

225. McGladdery's deliberate indifference directly caused Anthony's injuries.

**ANSWER: The allegations of Count IV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 225.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant, Mitchell McGladdery, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations in this paragraph.**

**COUNT V: 42 U.S.C. 1983**
**Against Defendant Nurse Practitioner Bruckner**

226. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint as if fully stated herein.**

227. At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 227.**

228. Bruckner knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 228.**

229. Bruckner was deliberately indifferent to Anthony's serious medical need.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 229.**

230. Bruckner recklessly disregarded Anthony's serious medical needs.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 230.**

231. Bruckner intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 231.**

232. Bruckner withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 232.**

233. Bruckner's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 233.**

234. No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Bruckner did.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 234.**

235. Bruckner failed to conform to basic standards of medical care.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 235.**

236. Bruckner "treatment decisions" were a substantial departure from accepted professional judgment, practice and standards, demonstrating that she did not rely on such judgment.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 236.**

237. Bruckner persisted in a course of treatment known to be ineffective.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 237.**

238. Bruckner chose easier and less efficacious treatments without exercising sound and reasonable professional judgment.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 238.**

239. Bruckner's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 239.**

240. Bruckner's deliberate indifference directly and proximately caused Anthony's injuries.

**ANSWER: The allegations of Count V are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 240.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant Helen Bruckner for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

**COUNT VI: 42 U.S.C. 1983**
**Against Defendant Dr. Eileen Couture**

241. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if fully stated herein.**

242. At all relevant times, Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 242.**

243. Dr. Couture knew that Anthony had a serious medical need that carried risks of permanent, serious impairment if left untreated.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 243.**

244. Dr. Couture was deliberately indifferent to Anthony's serious medical need.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 244.**

245. Dr. Couture recklessly disregarded Anthony's serious medical needs.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 245.**

246. Dr. Couture intended to deprive Anthony of necessary treatment for his serious medical needs.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 246.**

247. Dr. Couture withheld medical care from Anthony such that he endured needless pain and suffering.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 247.**

248. Dr. Couture's treatment of Anthony was highly unreasonable and a gross departure from ordinary care in this situation in which a high degree of danger is readily apparent.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 248.**

249.     No minimally competent professional would have responded to Anthony's medical condition under those circumstances in the way that Dr. Couture did.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 249**

250.     Dr. Couture failed to conform to basic standards of medical care.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 250.**

251.     Dr. Couture "treatment decisions" were a substantial departure from accepted professional judgment, practice and standards.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 251.**

252.     Dr. Couture persisted in a course of treatment known to be ineffective.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 252.**

253.     Dr. Couture chose easier and less efficacious treatments without exercising sound and reasonable professional judgment.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 253.**

254. Dr. Couture's conduct contributed to an inexplicable delay in treatment that served no legitimate penological interest.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 254.**

255. Dr. Couture's deliberate indifference directly proximately caused Anthony's injuries.

**ANSWER: The allegations of Count VI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 255.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant Dr. Eileen Couture for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

### COUNT VII: Medical Malpractice, Negligence, Respondent Superior
### Against Defendant Wexford Health Sources, Inc.

256. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: The allegations in Count VII are the subject of Wexford's partial motion to dismiss filed simultaneously with its answer. Therefore, Wexford provides no response to paragraph 256.**

257. At all relevant times, Wexford owed Anthony Lee a duty of reasonable medical care.

**ANSWER: The allegations in Count VII are the subject of Wexford's partial motion to dismiss filed simultaneously with its answer. Therefore, Wexford provides no response to paragraph 257.**

258.    Wexford, by and through its agents and employees, breached its duty to provide reasonable medical care to Anthony Lee.

**ANSWER: The allegations in Count VII are the subject of Wexford's partial motion to dismiss filed simultaneously with its answer. Therefore, Wexford provides no response to paragraph 258.**

259.    The Wexford employees and/or agents responsible for caring for Anthony's burn and skin graft, including Dr. Henze, Dr. Kucera, Nurse McGladdery, Nurse Practitioner Bruckner, Dr. Couture, Nurse Paramore, and Nurse Ohakosim breached their duty of care, were negligent, and consciously disregarded Anthony's safety.

**ANSWER: The allegations in Count VII are the subject of Wexford's partial motion to dismiss filed simultaneously with its answer. Therefore, Wexford provides no response to paragraph 259.**

260.    As a result of Wexford employees and/or agents' negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: The allegations in Count VII are the subject of Wexford's partial motion to dismiss filed simultaneously with its answer. Therefore, Wexford provides no response to paragraph 260.**

261.    Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

58

**ANSWER: The allegations in Count VII are the subject of Wexford's partial motion to dismiss filed simultaneously with its answer. Therefore, Wexford provides no response to paragraph 261.**

WHEREFORE, Plaintiff, Anthony Lee, demands judgment against Defendant Wexford, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies that Plaintiff is entitled to judgment in his favor against Defendant Wexford. Wexford denies that Plaintiff is entitled to damages. Wexford denies that Plaintiff is entitled to disbursements, attorney fees and costs and interest. Wexford denies that Plaintiff is entitled to other and further relief. Wexford denies the remaining allegations of this paragraph.**

**COUNT VIII: Medical Malpractice, Negligence**
**Against Defendant Dr. Marlene Henze**

262. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if stated fully herein.**

263. At all relevant times, Dr. Henze owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: The allegations of Count VIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 263.**

264. Dr. Henze breached her duty to provide reasonable medical care to Anthony Lee.

**ANSWER: The allegations of Count VIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 264.**

265. Dr. Henze breached her duty of care to Anthony and was negligent.

**ANSWER: The allegations of Count VIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 265.**

266. As a result of Dr. Henze's negligent acts and omissions, Wexford employees and/or agents Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: The allegations of Count VIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 266.**

267. Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: The allegations of Count VIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies each and every allegations contained in the declaration and attorney's affidavit, and denies each and every allegation and opinion in the Health Professional's Report and incorporated in paragraph 267.**

WHEREFORE, Plaintiff, Anthony Lee, demands judgment against Defendant Henze for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

**COUNT IX: Medical Malpractice, Negligence**
**Against Defendant Dr. Dianna Kucera**

268.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if fully stated herein.**

269.    At all relevant times, Dr. Kucera owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: The allegations of Count IX are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 269.**

270.    Dr. Kucera breached their duty to provide reasonable medical care to Anthony Lee.

**ANSWER: The allegations of Count IX are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 270.**

271.    Dr. Henze breached her duty of care to Anthony and was negligent.

**ANSWER: The allegations of Count IX are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 271.**

272.    As a result of Dr. Kucera's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: The allegations of Count IX are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge**

or information sufficient to form a belief about the truth of the allegations in paragraph 272.

273. Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: The allegations of Count IX are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies each and every allegations contained in the declaration and attorney's affidavit, and denies each and every allegation and opinion in the Health Professional's Report and incorporated in paragraph 273.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant Kucera for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

### COUNT X: Medical Malpractice, Negligence
### Against Defendant Nurse Mitchell McGladdery

274. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if fully stated herein.**

275. At all relevant times, Nurse McGladdery owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: The allegations of Count X are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 275.**

62

276. Nurse McGladdery breached their duty to provide reasonable medical care to Anthony Lee.

**ANSWER: The allegations of Count X are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 276.**

277. Nurse McGladdery breached her duty of care to Anthony and was negligent.

**ANSWER: The allegations of Count X are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 277.**

278. As a result of Nurse McGladdery's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: The allegations of Count X are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 278.**

279. Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Wexford denies each and every allegation contained in the declaration and attorney's affidavit and denies each and every allegation and opinion in the Health Professional's Report and incorporated in paragraph 279.**

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant McGladdery for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

### COUNT XI: Medical Malpractice, Negligence
### Against Defendant Nurse Practitioner Helen Bruckner

280. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if fully stated herein.**

281. At all relevant times, Nurse Practitioner Bruckner owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: The allegations of Count XI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 281.**

282. Nurse Practitioner Bruckner breached their duty to provide reasonable medical care to Anthony Lee.

**ANSWER: The allegations of Count XI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 282.**

283. Nurse Practitioner Bruckner breached her duty of care to Anthony and was negligent.

**ANSWER: The allegations of Count XI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 283.**

284. As a result of Nurse Practitioner Bruckner's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: The allegations of Count XI are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 284.**

285. Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Wexford denies each and every allegation contained in the declaration and attorney's affidavit and denies each and every allegation and opinion in the Health Professional's Report and incorporated in paragraph 285.**

WHEREFORE, Plaintiff, Anthony Lee, demands judgment against Defendant Bruckner for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

### COUNT XII: Medical Malpractice, Negligence
### Against Defendant Dr. Eileen Couture

286. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if fully stated herein.**

287. At all relevant times, Dr. Couture owed Anthony Lee a duty to provide reasonable medical care.

65

**ANSWER: The allegations of Count XII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 287.**

288.    Dr. Couture breached their duty to provide reasonable medical care to Anthony Lee.

**ANSWER: The allegations of Count XII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 288.**

289.    Dr. Couture breached her duty of care to Anthony and was negligent.

**ANSWER: The allegations of Count XII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 289.**

290.    As a result of Dr. Couture's negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: The allegations of Count XII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford denies the allegations in paragraph 290.**

291.    Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Wexford denies each and every allegation contained in the declaration and attorney's affidavit and denies each and every allegation and opinion in the Health Professional's Report and incorporated in paragraph 291.**

66

WHEREFORE, Plaintiff Anthony Lee demands judgment against Defendant Couture for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

### COUNT XIII: Medical Malpractice, Negligence
### Against Defendant Dr. Stathis Poulakidas

292. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if fully stated herein.**

293. At all relevant times, Dr. Poulakidas owed Anthony Lee a duty to provide him with reasonable medical care.

**ANSWER: The allegations of Count XIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 293.**

294. Dr. Poulakidas breached his duty to provide reasonable medical care to Anthony Lee.

**ANSWER: The allegations of Count XIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 294.**

295. Dr. Poulakidas was negligent.

**ANSWER: The allegations of Count XIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge**

**or information sufficient to form a belief about the truth of the allegations in paragraph 295.**

296. As a result of Dr. Poulakidas's negligent acts and omissions, Wexford employees and/or agents Anthony suffered unnecessary and prolonged pain and ultimately lost a limb.

**ANSWER: The allegations of Count XIII are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 296.**

297. Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Wexford denies each and every allegation contained in the declaration and attorney's affidavit and denies each and every allegation and opinion in the Health Professional's Report and incorporated in paragraph 297.**

WHEREFORE, Plaintiff, Anthony Lee, demands judgment against Defendant Poulakidas for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

**COUNT XIV: Medical Malpractice, Negligence, Respondeat Superior
Against Defendant Presence Central and Suburban Hospitals Network, an
Illinois not-for-profit corporation d/b/a Ascension Mercy, and also d/b/a AMITAHealth
Mercy Medical Center, a/k/a AMITA Health Aurora, also d/b/a PrimeHealthcare Services,
Inc. a/k/a Prime Healthcare d/b/a Mercy Medical Center**

298. Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER: Wexford restates and incorporates its answers to each paragraph of this complaint, as if fully stated herein.**

299. At all relevant times, AMA, by and through its agents, owed Anthony Lee a duty of reasonable medical care.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 299.**

300. AMA, by and through its agents and employees, breached its duty to provide reasonable medical care to Anthony Lee.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 300.**

301. The AMA employees and/or agents responsible for caring for Anthony's skin graft, wound, and infection, including Dr. Poulakidas, breached their duty of care, were negligent, and consciously disregarded Anthony's safety.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 301.**

302. Prime Healthcare Services, Inc., purchased AMITA Health Mercy Medical Center a/k/a Amita Health Aurora, a hospital facility at 1325 N Highland Ave, Aurora, IL 60506, on March 1, 2025. The facility is now called Mercy Medical Center.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 302.**

303. Upon information and belief, Prime Healthcare Services, Inc. a/k/a Prime Healthcare d/b/a Mercy Medical Center assumed care of the patients at 1325 N Highland Ave, Aurora, IL 60506.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 303.**

304. Upon the purchase of the facility, Prime Healthcare Services, Inc. a/k/a Prime Healthcare d/b/a Mercy Medical Center maintains a principal place of business continued to be 1325 N Highland Ave, Aurora, IL 60506.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 304.**

305. Upon information and belief, Prime Healthcare Services, Inc. a/k/a Prime Healthcare d/b/a Mercy Medical Center retained the same nursing staff previously employed by Presence Central and Suburban Hospitals Network d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 305.**

306. When Aliya of Palos Park assumed care of the patients at 1325 N Highland Ave, Aurora, IL 60506, Anthony Lee's nurses and doctors did not change.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 306.**

307. When Prime assumed care of the patients at 1325 N Highland Ave, Aurora, IL 60506, Anthony Lee's medical chart continued to be housed by the same electronic records system.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 307.**

308. Upon information and belief, Prime assumed some or all liabilities of its predecessor Presence Central and Suburban Hospitals Network, an Illinois not-for profit corporation d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge**

71

or information sufficient to form a belief about the truth of the allegations in paragraph 308.

309. Since the sale of the facility, and at all times relevant, Defendant Prime has been involved in the same business as its predecessor, which is to provide long term nursing services to elderly and disabled patients.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 309.**

310. By purchasing the same business, Prime expressly or impliedly agreed to assume liabilities of Presence Central and Suburban Hospitals Network, an Illinois not-for-profit corporation d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 310.**

311. As described above, during Anthony Lee's treatment at 1325 N Highland Ave, Aurora, IL 60506 he underwent unnecessary amputation surgery of his leg.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 311.**

312.    As the successor to Presence Central and Suburban Hospitals Network, an Illinois not-for-profit corporation d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora, Defendant Prime is liable to Plaintiff for the debts and liabilities of its predecessors, including any and all judgments rendered against its predecessors related to Anthony Lee's injuries described in this complaint.

**ANSWER: The allegations of Count XIV are not directed against this Defendant. If the allegations of this paragraph are directed at this Defendant, then Wexford lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 312.**

313.    Attached to the Complaint as a Declaration is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Wexford denies each and every allegation contained in the declaration and attorney's affidavit and denies each and every allegation and opinion in the Health Professional's Report and incorporated in paragraph 313.**

314.    As a result of Defendant Presence Central and Suburban Hospitals Network, an Illinois not-for-profit corporation d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora's employees and/or agents' negligent acts and omissions, Anthony suffered unnecessary and prolonged pain and ultimately lost a limb. Attached to the Complaint is the Affidavit of the Attorney and the Health Professional's Report filed pursuant to 735 ILCS 5/2-622(a)(2).

**ANSWER: Wexford denies each and every allegation contained in the declaration and attorney's affidavit and denies each and every allegation and opinion in the Health Professional's Report and incorporated in paragraph 314.**

WHEREFORE, Plaintiff, Anthony Lee, demands judgment against Defendant Defendant Presence Central and Suburban Hospitals Network, an Illinois not-for profit corporation d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora, also d/b/a Prime Healthcare Services, Inc. a/k/a Prime Healthcare d/b/a Mercy Medical Center, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**ANSWER: Wexford denies the allegations of this paragraph.**

## V. Request for Relief

WHEREFORE, Plaintiff, Anthony Lee, respectfully requests judgment against Defendants Wexford, Henze, Kucera, McGladdery, Bruckner, Couture, Presence Central and Suburban Hospitals Network, an Illinois not-for-profit corporation d/b/a Ascension Mercy, and also d/b/a AMITA Health Mercy Medical Center, a/k/a AMITA Health Aurora, also d/b/a Prime Healthcare Services, Inc. a/k/a Prime Healthcare d/b/a Mercy Medical Center, and Dr. Poulakidas jointly and severally, for the following:

a.    An    award    of    compensatory    and    punitive    damages;

**ANSWER: Defendant Wexford denies that Plaintiff is entitled to an award of compensatory and/or punitive damages. Defendant Wexford denies that Plaintiff is entitled to a judgment.**

b.  An award of full costs and attorneys' fees arising out of this litigation pursuant to 42 U.S.C. § 1988(b); and

**ANSWER: Defendant denies that Plaintiff is entitled to an award of full costs and attorneys' fees arising out of this litigation pursuant to 42 U.S.C. § 1988(b). Defendant Wexford denies that Plaintiff is entitled to a judgment.**

c. Any other further relief this Court may deem just and appropriate.

74

**ANSWER: Defendant denies that Plaintiff is entitled to any further relief. Defendant Wexford denies that Plaintiff is entitled to a judgment.**

## GENERAL DENIAL

Defendant, WEXFORD HEALTH SOURCES, INC. makes a general denial to all the allegations in Plaintiff's Third Amended Complaint not expressly denied above.

## JURY DEMAND

Defendant, WEXFORD HEALTH SOURCES, INC. demands a trial by jury.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC. respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant and against Plaintiff, dismissing his Third Amended Complaint with prejudice and with costs including attorney fees pursuant to 42 U.S.C. § 1988(b) and for such other relief as this Court deems appropriate and just.

## AFFIRMATIVE DEFENSES

Without prejudice to the denials of the allegations contained in Plaintiff's Third Amended Complaint, Defendant, WEXFORD HEALTH SOURCES, INC. without waiving the obligations of Plaintiff to prove every factual element of his claims, states as and for its Affirmative Defenses as follows:

**I.      Qualified Immunity**

1.      At all times relevant herein, the Defendant acted in good faith in the performance of her official duties and without violating the Plaintiff's statutory or constitutional rights of which a reasonable person would have known. Therefore, the doctrine of qualified immunity protects this Defendant from this lawsuit. "Qualified immunity shields [officials] from civil damages liability so long as their actions could reasonably have been thought consistent with the rights they are

75

alleged to have violated. *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7tyh Cir. 2005). The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

2.      The United States Supreme Court regards as beneficial, the two-step sequence for resolving government officials' immunity claims articulated in *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *see also Pearson*, 555 U.S. at 236 ("Although we now hold that the Saucier protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial…"). First, a court must decide whether the facts, as alleged by the plaintiff, make out a violation of a constitutional right. *Id.* at 232. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* In order to show that the right was clearly established, the plaintiff must show that the defendant's "violation [of the constitutional right] was so clear that an official would realize he or she was violating an inmate's constitutional rights." *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006).

3.      The Plaintiff's Third Amended Complaint alleges that Defendants provided medical care and treatment to the decedent while he was incarcerated at a state-run prison. At no time did any Defendant render medical care that was so clearly a violation of the decedent's constitutional rights that the Defendant would realize he or she was providing medical care tantamount to cruel and unusual punishment. Thus, the doctrine of qualified immunity applies and shields these Defendants from this litigation.

4.      The Defendant further recognizes that the Seventh Circuit has suggested, in dicta, that qualified immunity is not available to private medical in state-run prisons. *See Petties v. Carter*, 836 F.3d 722, 733-34 (7th Cir. 2016). However, the United States Supreme Court's

76

decision in *Filarsky v. Delia* controls and establishes that immunity is available to a government's private contractors who are performing jobs that, otherwise, would be performed by state agents, who unquestionably could assert qualified immunity.

5. In *Filarsky*, the Supreme Court, unanimously, held that a private attorney hired by a municipality to perform a task was entitled to claim qualified immunity. *Filarsky v. Delia*, 566 U.S. 377, 390 (2012) ("Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to 'ensure that talented candidates are not deterred by the threat of damages suits from entering public service.'") (internal marks omitted.)

6. Other circuits follow *Filarsky* and apply qualified immunity to private medical providers working in state-run prisons. In a decision handed down after *Petties*, the Tenth Circuit Court of Appeals found that *Filarsky* controlled and applied qualified immunity to a private doctor working in a state prison. *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1108-09 (10th Cir. 2016) ("Dr. Doe stands in the same position as the attorney in *Filarsky* – he was a private party hired to do a job for which a permanent government employee would have received qualified immunity. Thus, we conclude that qualified immunity applies to Dr. Doe.").

7. The Supreme Court's *Filarsky* decision combined with the case law of other Courts of Appeal establish that qualified immunity applies to private medical providers performing medical services in a state-run prison. Thus, Defendants have a non-frivolous argument for extending, modifying, or reversing existing law in this Circuit.

## II. Injunctive Relief Barred

1. To the extent that Plaintiff is suing the Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his requests for such relief are barred by the Eleventh Amendment and the Prison Litigation Reform Act.

2. Wexford is no longer the private health care contractor within the facilities of the Illinois Department of Corrections and cannot provide any injunctive relief.

### III. Failure to Exhaust Administrative Remedies

1. Plaintiff has failed to exhaust his administrative remedies prior to the initiation of this cause of action. As a result, Plaintiff's claims are barred by the Prison Litigation Reform Act.

2. Plaintiff failed to contact his counselor prior to filing his grievance.

3. Plaintiff failed to timely submit his grievance to a grievance officer after he knew or should have known of a medical grievance regarding the treatment of his burns and resulting wounds.

4. Plaintiff failed to timely and properly appeal any alleged grievance to the Administrative Review Board.

5. Plaintiff has failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act and corresponding Illinois Statutes and Codes. Therefore, Plaintiff's Third Amended Complaint must be dismissed for failure to properly exhaust his administrative remedies.

### IV. Statute of Limitations

1. On February 20, 2025, Plaintiff filed his initial Complaint at Law, alleging constitutional violations and medical negligence on a theory of *respondeat superior* against Defendant, WEXFORD HEALTH SOURCES, INC., in which Plaintiff asserted allegations of alleged misconduct dating back to February 25, 2023. (Dkt. 1).

3. On June 22, 2026, Plaintiff filed his Third Amended Complaint, in which Plaintiff continued to assert allegations of fact which date back to February 25, 2023, while specifically asserting for the first time, allegations of negligence against Priscilla Paramore and Anne Ohakosim. (Dkt. 136).

5.      In § 1983 cases, courts borrow the most analogous state limitations period, so long as the application of state law is not "at odds with the purpose or operation of federal substantive law." *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995).

6.      Actions under § 1983 arising in Illinois are governed by a two-year statute of limitations. *Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276-277 (7th Cir. 1989); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *Campbell v. Forest Preserve Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 668 (7th Cir. 2014); 735 ILCS 5/13-202 (2017).

7.      Federal law determines the date of accrual for purposes of calculating the two-year period. *See Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). "Civil rights claims, therefore, accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id*. (internal citation omitted).

8.      Additionally, the statute of limitations in Illinois for a medical malpractice claim is two years. 735 ILCS 5/13-212.

9.      Plaintiff's allegations of negligence against Defendant Wexford in relation to the individuals, Priscilla Paramore and Anne Ohakosim, have been raised beyond the applicable statute of limitations.

10.      Plaintiff's allegations against Defendant Wexford with respect to the alleged negligence of Priscilla Paramore and Anne Ohakosim, do not satisfy the requirements of Federal Rule of Civil Procedure 15(c) as they do not relate back to Plaintiff's original claims raised in his Initial Complaint at Law.

11.      Therefore, to the extent that Plaintiff's claims are barred by the statute of limitations, they should be dismissed with prejudice.

**V.      Compensatory Damages Barred**

1.     To the extent that Plaintiff is suing the Defendant for compensatory damages for mental or emotional injury suffered without a prior showing of physical injury, his claim is barred by the Prison Litigation Reform Act.

## VI.     Sole Proximate Cause

1.     The sole proximate cause of Plaintiff's burn injuries right leg was Plaintiff's own deliberate and intentional act of setting himself on fire for the purpose of secondary gain, specifically to be sent out to a hospital.

2.     The sole proximate cause of Plaintiff's right leg above the knee amputations was Plaintiff's failure to follow the medical advice of his providers in keeping his wounds free from infection, contamination and further self-injury.

3.     Plaintiff had a duty to follow reasonable medical advice and recommendations provided to him by medical staff for the treatment and management of his claimed conditions.

4      Plaintiff failed to exercise reasonable care and failed to follow the reasonable medical advice and recommendations provided to him by medical staff for the treatment and management of his claimed conditions, and breached his own duty of care in that he:

    a.     intentionally and deliberately caused his graft to become infected during wound care, resulting in his right leg graft failure;

    b.     intentionally and deliberately interfered with the healing of his skin graft by picking and removing his skin graft, thereby proximately causing graft failure.

5.     Plaintiff's own actions resulted in a continuous course of negligent infliction of his claimed injuries and were the sole proximate cause of any alleged injuries which are claimed in

his complaint and, therefore, this Defendant is not liable to the Plaintiff for the claims asserted herein.

## VII. Mootness

1. To the extent that Plaintiff is suing the Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his claim is moot.

## VIII. Res Judicata

1. To the extent Plaintiff has previously litigated the same issues in a prior action that are now involved in this lawsuit, Plaintiff's suit is barred by the doctrine of res judicata.

## IX. Contributory Negligence

1. Without prejudice to its answers and denials as articulated in the answer of Defendant, WEXFORD HEALTH SOURCES, INC., to the Third Amended Complaint, (said answer is incorporated and adopted herein by reference), Defendant, WEXFORD HEALTH SOURCES, INC., pleads in the alternative.

2. Plaintiff, ANTHONY LEE was sentenced to 30 years of prison stemming from his conviction. On information and belief, he was housed at Joliet Treatment Center (hereinafter "JTC") in or about February 2023.

3. On or about February 25, 2023, Plaintiff, ANTHONY LEE deliberately and intentionally lit himself on fire for the purpose of secondary gain, specifically to be sent to out to a hospital.

4. Plaintiff, ANTHONY LEE, has a long history of self-injury for secondary gain.

5. Plaintiff's self-immolation involved lighting wrapping toilet paper and a t-shirt around his right leg, lighting this material on fire while using petroleum jelly as an accelerant, and then wrapping the burning material in plastic.

81

6. It is estimated that Plaintiff's leg burned in excess of 10 minutes. Plaintiff ANTHONY LEE, has testified that he passed out and loss consciousness while trying to put out the fire to his right leg, which he deliberately and intentionally caused.

7. As a result of Plaintiff's ANTHONY LEE's own actions in lighting himself on fire, particularly the means and methods utilized in the event and the amount of time in which his leg burned, he deliberately caused himself significant burns on his right lower leg.

8. At all times relevant, Plaintiff, ANTHONY LEE received adequate, reasonable and standard of care medical treatment at Joliet Treatment Center (hereinafter "JTC"), and Stateville Correctional Center (hereinafter "Stateville").

9. While being treated at Stateville for his self-inflicted burn injuries, Plaintiff ANTHONY LEE failed to keep his wounds free from harmful bacteria or contamination due to Plaintiff's repeated picking and disruption of his wounds despite multiple providers advising him of the risk for infection.

10. On May 5, 2023, during intake at Mercy Medical Center, he informed an attending nurse that he "took off [the] graft and hid it from facility staff because he didn't want anyone to know."

11. Multiple providers of Mercy Medical Center indicate in their charts that there was concern of self-injurious behavior by Plaintiff, ANTHONY LEE, concerning his skin graft.

12. Plaintiff, ANTHONY LEE's alleged injuries were a result, in whole or in part, of his own careless and negligent conduct and Defendant WEXFORD HEALTH SOURCES, INC. is otherwise free from liability for said alleged injuries.

13. At the time of occurrence alleged in the Third Amended Complaint, Plaintiff, ANTHONY LEE was under a duty to exercise ordinary care for his own safety and to avoid acting,

82

or failing to act, in a negligent and careless manner.

13.     Notwithstanding that duty, Plaintiff, ANTHONY LEE was negligent and careless in one or more of the following respects by:

a.      deliberately and intentionally setting his right leg on fire, causing substantial injury to his right leg, for the purpose of secondary gain;

b.      deliberately and intentionally picking or disrupting his wounds from the burns and resulting skin graft;

c.      deliberately and intentionally removing his skin graft resulting in an above the knee amputation;

d       refusing to follow the directions of Mercy Hospital, IDOC, and Defendant, WEXFORD HEALTH SOURCES, INC. providers;

e.      refusing to follow the directions of emergency room providers, hospitalists, nurses, surgeons, or burn specialists;

f.      was otherwise careless and negligent.

14.      The injuries and damages, if any, sustained by Plaintiff, ANTHONY LEE were caused by the direct and proximate result of one or more of the foregoing acts or omission by Plaintiff, ANTHONY LEE.

15.      There was in full force and effect at the time of the occurrence Section 2-1116 of the Illinois Code of Civil Procedure, which bars Plaintiff, ANTHONY LEE from recovering damages if his contributory fault is more than 50% of the proximate cause of the injury or damage from which recovery is sought.

16.      Plaintiff, ANTHONY LEE's negligence is more than 50% of the proximate cause of the injuries for which he now seeks recovery from Defendant WEXFORD HEALTH

SOURCES, INC. Therefore, Plaintiff's claims should and must be barred.

17. Alternatively, if Plaintiff, ANTHONY LEE is determined to be in contributory fault for his failure to exercise ordinary care for his own safety, but not more than 50% of the proximate cause of the injury or damage for which recovery is sought, then any recovery from Defendant, WEXFORD HEALTH SOURCES, INC. shall be diminished in proportion to the amount of fault attributable to Plaintiff, ANTHONY LEE.

## X. Failure to State Claim with Specificity - *Monell*

1. In Count One of Plaintiff's Third Amended Complain, Plaintiff fails to state a claim upon which relief could be granted pursuant to 42 U.S.C. §1983.

2. To assert a claim for cruel and unusual punishment under the Eighth Amendment of the Constitution, the plaintiff must show (1) deliberate indifference to (2) a serious medical need of a prisoner. *Estelle v. Gamble*, 429 U.S. 97 (1976).

3. A private corporation acting under the color of law may be liable under Section 1983 if an official policy or custom of the corporation resulted in the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

4. To state a viable Section 1983 claim against a private corporation acting under the color of state law, a plaintiff must prove that injury was caused by (1) an express policy; (2) a widespread practice constituting a "custom or usage;" or (3) the act of a person with final policymaking authority at the corporation. *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008).

5. Additionally, a plaintiff must plead more than mere personal experience of an alleged deprivation. *See Eichelkraut v. Jungles*, No. 21-CV-02528, 2022 U.S. Dist. LEXIS 5121, at *22 (N.D. Ill. Jan. 11, 2022).

6. Plaintiff's isolated allegations pertaining to his alleged care do not amount to

widespread practice and do not establish liability on the part of Defendant.

7. Finally, a plaintiff must establish that the defendant's action – i.e., the policy, practice, or final policymaker's decision – was the "moving force" behind the plaintiff's injury. *J K.J v. Polk Country*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). This requirement of a "direct causal link" between the defendants' action and the plaintiff's injury ensures that the defendant is held liable only for its own conduct, not for "a one-time negligent administration of a policy or factors peculiar to the officer involved in a particular incident." *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021) (quoting Brown, 520 U.S. at 407-08). "The critical question … is whether a municipal or corporate policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Ind. Dep't of Corr.,* 849 F.3d 372, 382 (7th Cir. 2017).

8. Plaintiff failed to properly plead allegations that the "moving force" behind any injury he suffered was a policy, procedure, custom, or practice that is "properly attributable" to Defendant, WEXFORD HEALTH SOURCES, INC.

9. Plaintiff's allegations regarding the policies, procedures, customs, or practices of Defendant, WEXFORD HEALTH SOURCES, INC. do not rise to the level of a constitutional violation under Section 1983 and, therefore, cannot establish that this Defendant was deliberately indifferent.

## XI. Failure to Assert Supplemental Jurisdiction

1. Through his Third Amended Complaint, Plaintiff asserts state law claims of medical malpractice against Defendant.

2. Plaintiff has failed to properly assert and/or otherwise plead supplemental

jurisdiction to these state law claims pursuant to 28 U.S.C. §1367.

3.     Therefore, Plaintiff's state law claims should be dismissed.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC. respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant and against Plaintiff, dismissing his Third Amended Complaint with prejudice and with costs including attorney fees pursuant to 42 U.S.C. § 1988(b) and for such other relief as this Court deems appropriate and just.

Respectfully submitted,
CONNOLLY KRAUSE, LLC

By: */s/ Christopher J. Garavaglia*
One of the Attorneys for
Defendant, Wexford Health
Sources, Inc.

Robert S. Tengesdal (#6288650)
Christopher J. Garavaglia (#6323928)
CONNOLLY KRAUSE LLC
Attorneys for Defendant,
Wexford Health Sources, Inc.
150 N LaSalle Street, Suite 1000
Chicago, Illinois 60601
Tel: (312) 253-6200
Email: rtengesdal@cktrials.com; cgaravaglia@cktrials.com

86

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.

By:    /s/*Christopher J. Garavaglia*
*One of the Attorneys for the Defendant,*
*Wexford Health Sources, Inc.*


Robert S. Tengesdal (#6288650)
Christopher J. Garavaglia (#6323928)
CONNOLLY KRAUSE LLC
Attorneys for Defendant,
Wexford Health Sources, Inc.
150 N LaSalle Street, Suite 1000
Chicago, Illinois 60601
Tel: (312) 253-6200
Email: rtengesdal@cktrials.com; cgaravaglia@cktrials.com