**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony Lee, | ) | |
| | ) | |
| Plaintiff, | ) | No: 25-cv-01772 |
| | ) | |
| v. | ) | |
| | ) | |
| Wexford Health Sources, Inc., et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**PLAINTIFF'S OMNIBUS RESPONSE TO DEFENDANTS WEXFORD HEALTH SOURCES, INC., HENZE, COUTURE, AND BRUCKNER'S PARTIAL MOTIONS TO DISMISS (ECF 140, 141, 146, 147)**

On February 25, 2023, Anthony Lee set his right leg on fire at Joliet Treatment Center ("JTC") and subsequently suffered from third-degree circumferential burns to his leg. ECF 136 ¶¶ 44-45. Dr. Henze and Kucera, two Wexford Health Sources, Inc. ("Wexford") physicians, were not at JTC at the time of Anthony's injuries and relied on the assessments made by Nurses Paramore and Ohakosim ("Wexford Nurses") and conveyed via phone call. *Id.* ¶ 47. Upon hearing the description provided by the Wexford nurses, Dr. Henze prescribed only Tylenol and Silvadene, and directed that Anthony's leg be wrapped in gauze. *Id* ¶¶ 57-58. Dr. Henze and Kucera then ordered that Anthony be kept in four-point restraints, in which Anthony remained until February 27, 2023. *Id.* ¶¶ 61-86. By the time Dr. Henze referred Anthony to a hospital—two days after the initial burn—he no longer had a pulse in his right leg, and there was already a high risk of imminent life-

threatening deterioration and amputation *Id.* ¶¶ 87-93. Anthony eventually returned to IDOC, where he was to be cared for by Wexford employees under the direction of Dr. Henze. Over that month, Anthony's leg became infected, but he was never treated for that infection. Eventually, his leg had to be amputated above the knee on May 5, 2023. *Id.* ¶¶ 94-145.

Anthony Lee ("Plaintiff") has brought suit against Wexford, Dr. Marlene Henze, Dr. Eileen Couture, and Nurse Practitioner Helen Bruckner, among others, alleging that Mr. Lee received negligent and constitutionally inadequate care from the defendant practitioners and their employer, Wexford. Defendants now ask this court to dismiss the claims of punitive damages. Defendant Wexford additionally asks this court to dismiss County VII of Plaintiff's Complaint for failure to state a claim. Plaintiff responds to both motions in this response. The Court should deny their motions.

## **FACTUAL BACKGROUND**

On February 25, 2023, Anthony Lee was incarcerated at JTC. During a severe mental health crisis, Anthony set his leg on fire. ECF 136 ¶¶ 44. As a result, Anthony suffered severe third-degree circumferential burns to his leg that quickly developed bursting blisters. Id. ¶¶ 45, 48. Dr. Henze, JTC's on-call Wexford physician, and Dr. Kucera, an IDOC psychologist, were not at JTC at the time of Anthony's injuries and relied on the assessments made by Wexford nurses Paramore and Ohakosim and conveyed via phone call. *Id.* ¶ 47. Wexford policy allowed on-call physicians like Dr. Henze to freely travel and take time away from

the facility, as long as they were available by phone, so JTC could be left without a physician available to personally assess patients in person for extended periods of time, including the weekend of February 25-26, 2023. *Id.* ¶¶ 52-54, 56.

Based on the description Nurses Paramore and Ohakosim (the Wexford Nurses) provided to Dr. Henze via telephone, Dr. Henze chose to do very little to address Mr. Lee's emergent medical condition, only prescribing Tylenol then ordering Silvadene and a gauze dressing for his severe burn. *Id.* ¶¶ 57-58. Dr. Henze did not even order ice or elevation until the evening of February 26. *Id.* ¶ 59. At the same time, Dr. Henze ordered Anthony to be placed in four-point restraints in response to his act of setting himself on fire. *Id.* ¶¶ 61. Anthony repeatedly complained to the Wexford Nurses that the restraints were extremely painful because of the third-degree burn the wrapped around his leg, and they asked Dr. Henze if the restraints could be removed. *Id.* ¶ 63-64. Dr. Henze advised the Wexford Nurses that Anthony must remain in the four-point restraint regardless. *Id.* ¶¶ 65-66. The use of restraint here, ordered by Wexford doctors and carried out by Wexford nurses was in direct violation of Illinois Department of Corrections policy 04.04.103 where the Anthony was already seriously injured, the restraints would aggravate the burn wound or would further limit circulation to a limb where circulation was already compromised, and no additional restrain order was given for over 15 hours. *Id.* ¶¶ 66-69.

Anthony remained in the restraints while his leg blistered, swelled, lost feeling, developed palpable pulses, and other symptoms indicative of compartment

syndrome due to the circumferential burn restricting blood flow to his leg. *Id.* ¶¶ 73-75. Compartment syndrome is a surgical emergency that requires immediate treatment to prevent an increased likelihood of loss of limb. *Id.* ¶¶ 76, 90-92. Anthony was finally released from the restraints on February 27 by IDOC correctional Lieutenants (as opposed to an order by a Wexford practitioner). *Id.* ¶ 86. Anthony was referred to the hospital on February 27, where he received an escharotomy to relieve the pressure caused from the burn and increase circulation in his leg. *Id.* ¶¶ 87-90. By the time Anthony arrived at the hospital, he no longer had a pulse in his right leg. *Id.* ¶ 88. Anthony's treaters at the hospital noted that the presentation to them was delayed, and that delay caused a "high likelihood of loss of limb…" *Id.* ¶¶ 91-92.

Anthony returned to Stateville Correctional Center on Match 16, 2023 after receiving a skin graft. *Id.* ¶¶ 109-110. At Stateville, Nurse Practitioner Bruckner and Dr. Eileen Couture, who had limited experience of caring for burns, were responsible for performing daily checks on the graft. *Id.* ¶¶ 112-116. Shortly after arriving at Stateville, Anthony's wound began to show signs of infection. *Id.* ¶ 98. In response to the infection, Anthony was prescribed 10 days of Augmentin. *Id.* ¶ 101. He was given no additional care at that point, and no professional ordered a wound culture or a referral to an external hospital until over a month later. *Id.* ¶¶ 102-103

Anthony was transported to AMITA Health Aurora, where he was evaluated by Dr. Abadin. *Id.* ¶ 104. Contrary to instructions from Dr. Abadin at AMITA Health Aurora upon discharge, Wexford staff did not give Anthony additional

antibiotics to treat his still-infected wound for nearly a month. *Id.* ¶ 109-110. During that period, the infection in Anthony's leg significantly worsened. *Id.* ¶ 118, 120-121. Anthony repeatedly asked for help with the growing pain of the infection and expressed concern that there was something wrong with his leg but was met with assurance from Wexford medical staff that he was fine. *Id.* ¶ 118-120. On the contrary, over the period from April 3 to April 29, Anthony's wound grew more infected, decaying to the point that his bone was visible, and requiring debridement on multiple occasions. *Id.* ¶ 121. Wexford staff knew that Anthony should be sent to a hospital, but instead kept Mr. Lee in Stateville, where he received no treatment to adequately assess the infection. *Id.* ¶ 123-125, 128-130. On April 29, Anthony was finally given a wound culture, which revealed an infection of antibiotic-resistant bacteria. Anthony was given new antibiotics, and for four days was told by Dr. Couture that he should "hold off" on going to the hospital. *Id.* ¶¶ 122-127.

On May 5, 2023, Anthony was finally taken to the hospital, where he received an amputation above the knee of his right leg. *Id.* ¶¶ 131, 142. Plaintiff alleges that because Mr. Lee was not timely referred to the hospital for the circumferential burn or treatment of his infection, and received substandard care from multiple Wexford actors, he lost his leg. *Id.* ¶ 178.

## **STANDARD OF REVIEW**

Under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw every reasonable inference in Plaintiff's favor. A complaint survives if it contains "sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a probability requirement," and the standard "does not require detailed factual allegations." *Id.* The Court asks only whether the complaint, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### A. Plaintiff has alleged a plausible medical malpractice claim against Wexford.

Defendant Wexford[1] claims that Plaintiff has not sufficiently pled a medical malpractice claim against Wexford. Their argument is that Plaintiff has not sufficiently stated what standard of care should be used to measure Nurse Paramore's and Nurse Ohakosim's conduct or how they negligently breached that standard of care. Plaintiff has pled conduct on the part of at least five Wexford agents which put Wexford on notice of his claims.

#### *i. Plaintiff is not required to mechanically plead any precise language regarding the applicable standard of care or breach.*

Wexford asserts that Plaintiff has not pled a standard of care, an element of medical negligence. Plaintiffs need only provide a short and plain statement of the claim with sufficient factual content to suggest that he is entitled to relief. Fed. R. Civ. Pro. 8(a). Federal courts do not require plaintiffs to plead an exhaustive list of facts and legal elements to give the defendant fair notice of a claim. *Chapman v.*

[1] Wexford has not previously moved to dismiss, although Plaintiff has filed three other substantially similar complaints. See ECF 1, ECF 35, ECF 50.

*Yellow Cab Coop.,* 875 F.3d 846, 868 (7th Cir. 2017). Plaintiffs need not perfectly plead each element of the claim, and do not need to use the precise language of an applicable standard of care to survive a motion to dismiss. *Thomason v. Allison*, 2023 WL 5624704, at *3 (S.D. Ill. Aug. 31, 2023).

In *Flowers v. Wexford Health Sources, Inc.*, 2021 WL 3418845, at *3-4 (N.D. Ill. Aug. 5, 2021) Wexford argued that the complaint "fail[ed] to identify the proper standard of care." *Id.* The Court found that the plaintiff's allegations that a Wexford doctor was "aware of [the plaintiff's] surgery but failed to provide the necessary medications" was sufficient to "plausibly suggest that she breached the applicable standard of care," supported a claim against the doctor and Wexford. *Id.*

Similarly, here, Wexford argues that Plaintiff failed to "plead that Paramore or Ohakosim affirmatively owed any duty of care, let alone plead that they breached any standard of professional care." ECF 14 at 3. For this argument, they rely on *Estate of Ruiz v. Wexford Health Sources, Inc.,* Case No. 20-cv-1682, ECF # 99 at *4 (N.D. Ill. Jan. 20, 2021),[2] but that opinion did not fault the plaintiff for failing to specifically identify the elements of medical malpractice. Indeed, the Court stated in that opinion: "complaints do not need to match facts to 'elements' of a legal theory." *Id*. at 3 (quoting *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006)). In *Ruiz*, the Court faulted the plaintiff for failing to allege that an individual defendant owed a duty not because plaintiff failed to mechanically plead the elements, but because he "fail[ed] to point out what **allegations** in the Complaint reveal [the defendant's]

[2] Plaintiff was not able to find the order referenced by Defendants on Westlaw, and it does not appear that Defendants filed it on the docket. Plaintiff attaches that opinion as Exhibit 1.

duty." Exhibit 1, *Ruiz v. Wexford Health Sources Inc.,* Case No. 20-cv-1682, ECF # 99 at *4 (emphasis added). *Ruiz* does not stand for the proposition that plaintiff must plead a legal theory's magic language; it states the exact opposite and emphasizes the principle of *notice* in evaluating a plaintiff's complaint. Id. at 2 ("under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action'; not legal theories."). As in *Flowers* and *Ruiz*, the Court should sustain Plaintiff's complaint not because it provides a mechanical checklist of elements, but because the multiple allegations identified *infra* satisfy Rule 8's central concern—notice.

***ii. Plaintiff has pled facts that plausibly suggest the negligence of multiple Wexford agents.***

Per *Flowers* and *Ruiz,* Plaintiff is not required to plead elements of a legal theory, but rather allegations which would "plausibly suggest" negligence. ***Flowers,*** 2021 WL 3418845, at *3-4. Plaintiff has done so. For example, Plaintiff alleges that Dr. Henze knew that Mr. Lee had suffered severe burns that included bursting blisters and chose to do nothing but order an over-the-counter pain killer, a topical cream, and wrap it in gauze. *Id* ¶¶ *44-45,* 57-58. Plaintiff alleges she failed to personally assess the wound, prescribe medications, allow movement outside of restraints, order necessary therapeutic treatments, develop a treatment plan, refer Mr. Lee to the hospital or a specialist, ensure that his vascular status was monitored, collaborate with other providers, or even order ice or elevation of the leg. ECF 136 ¶¶ 49, 59-60, 78; See also ECF 137-5. This is sufficient to put Wexford on notice of the claims against it as they relate to Dr. Henze's malpractice.

Plaintiff has also alleged facts regarding Nurses Paramore and Ohakosim that provide Wexford with sufficient notice of the claims against Wexford that rest on a theory of the nurses' negligence. Plaintiff alleges that Nurse Paramore and Nurse Ohakosim, agents of Wexford, were tasked with assessing Anthony for the first two days and that Dr. Henze relied on their assessments. ECF 136 ¶¶ 46-48, 57. After speaking with the nurses, Dr. Henze chose to do virtually nothing to address Mr. Lee's serious injury, opting to place him in painful restraints instead. Id. at ¶¶ 57-61. These allegations plausibly suggest that either Dr. Henze disregarded the Wexford Nurses' communications, *or* the Wexford Nurses failed to properly communicate their concerns leading to deficient care by Dr. Henze. See Id. at ¶¶ 257-260. Plaintiff is permitted to plead alternative theories to support a single claim. *See Camp Drug Stores, Inc. v. Emily Corp.*, No. 17-CV-0397-NJR-DGW, 2018 WL 306841, at *1 (S.D. Ill. Jan. 5, 2018).

In addition to Dr. Henze and the Nurses, Plaintiff has also plausibly suggested negligence against Dr. Eileen Couture and Nurse Practitioner Bruckner. He alleges that after getting his skin graft, they were responsible for treating and assessing his wound, knew that it had become severely infected and failed to take reasonable and necessary steps to refer him to a hospital or specialist. ECF 136 ¶¶ 112, 115, 121, 127. The Complaint puts Defendants on notice of the medical malpractice claim against Wexford that is based on the conduct of Dr. Henze, Nurse Paramore, *and* Nurse Ohakosim, as well as Dr. Couture and Nurse Practitioner Bruckner, all of whom are alleged to be Wexford agents. ECF 136 ¶¶ 257-260.

Additionally, Plaintiff's 735 ILCS 5/2-622(a)(1) Affidavits supplement the Complaint's allegations against each Defendants. Doc. 137-2 (Bruckner), 137-3 (Couture), 135-5 (Henze), 137-9 (Wexford).[3] "[T]he Court can consider not only allegations contained in the Complaint itself, but also documents that are attached to it, including [an expert affidavit]." Exhibit 1, *Estate of Ruiz v. Wexford Health Sources, Inc., Case No. 20-cv-1682*, ECF # 99 at *4 (N.D. Ill. Jan. 20, 2021). Plaintiff's Affidavits attendant to Wexford, Henze, Couture, and Bruckner list in plain language what responsibilities Wexford and the named Defendants owed to Anthony, via its agents, and what acts of negligence Plaintiff alleges in relation to that standard of care. Doc. 137-2 (Bruckner), 137-3 (Couture), 135-5 (Henze), 137-9 (Wexford). This, coupled with the facts pled in the Third Amended Complaint itself, provides more than enough notice to Defendants of the claims against them.

The Third Amended Complaint thus pleads a clear throughline between conscious decisions by Wexford agents and Anthony's injury. Wexford's argument in their motion simply ignores the detailed facts laid out in the Complaint because the words "standard of care" and "breach" were not explicitly used at every opportunity. Their motion should be denied.

**B. The Third Amended Complaint properly requests an award of punitive damages.**

Defendants Wexford, Henze, Bruckner, and Couture claim that Plaintiff is improperly requesting punitive damages for Counts VII, VIII, XI, and XII of the Complaint. This is a misreading of Plaintiff's Complaint, as Plaintiff will only seek

[3] Plaintiff attached the exact same affidavits to each of the prior complaints.

punitive damages for claims where such damages are available, which Plaintiff concedes does not include negligence claims.

Punitive damages are available, however, for Plaintiff's Section 1983 claims against all Defendants. The Seventh Circuit has held that punitive damages are recoverable in Section 1983 actions against medical providers where a plaintiff alleges deliberate indifference. *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 930 (7th Cir. 2004). Punitive damages are also recoverable in Section 1983 claims against Wexford under a *Monell* theory. *See Gevas v. Obaisi,* No. 16-CV-10599, 2022 WL 17082526 (N.D. Ill. Nov. 18, 2022) ("Since there is a triable issue about whether Wexford had a custom or practice of withholding prescribed medicine, Wexford's motion for summary judgment on punitive damages is denied"). Here, Plaintiff has pled Section 1983 claims against all Defendants. Movants here do not contest the Section 1983 claims in their 12(b)(6) motions, and as such, cannot contest the request for punitive damages. The assignment of punitive damages is an issue for jury instructions at trial, where Plaintiff will not seek any damages that are not legally recoverable. The court should deny Defendants' Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Wexford, Henze, Couture, and Bruckner should be denied. In the alternative, if the Court finds any portion of the Complaint deficient, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

/s/ Sam Harton

Attorney for the Plaintiff

Sam Harton
Paul McMahon
Daisy Ayllon
ROMANUCCI & BLANDIN, LLC
321 N. Clark St., Suite 900
Chicago, IL 60654
Tel: (312) 253-8618
Fax: (312) 458-1004
sharton@rblaw.net